Filed 3/17/16  P. v. Kozee-Stoltz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069073 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1201090) |
| JORDAN PAUL KOZEE-STOLTZ et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of Riverside County, Albert J. Wojcik, Judge.  Affirmed in part, reversed in part and remanded.

Wallin & Klarich and Stephen D. Klarich for Defendant and Appellant Jordan Paul Kozee Stoltz.

Professional Law Corp. and Susan K. Shaler for Defendant and Appellant Christopher A. Newsome.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Randy Einhorn and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jordan Paul Kozee-Stoltz and Christopher Alexander Newsome (together defendants) of attempting to murder Brylowe Perez and Trenton Buchanan and found true the allegations that the attempted murder was willful, deliberate and premeditated. The jury also convicted defendants of second degree robbery, willfully discharging a firearm at an occupied motor vehicle and street terrorism. The jury found true that defendants personally used a firearm and that gang enhancements applied to all but the street terrorism charge. Newsome admitted a prior strike conviction. The court sentenced Stoltz to a determinate sentence of 13 years plus an indeterminate sentence of 30 years-to-life in prison and Newsome to a determinate sentence of 20 years and an indeterminate sentence of 60 years-to-life.

Defendants appeal, contending the trial court erred: (1) in declaring Buchanan to be an unavailable witness; (2) allowing uncorroborated accomplice testimony; (3) instructing the jury as to the street terrorism charge and gang enhancements; (4) by failing to give a unanimity instruction; (5) instructing the jury on attempted murder and the willfulness sentencing enhancement attached to this count; (6) by denying their request to instruct the jury it should consider an accomplice's plea bargain when assessing the accomplice's credibility; (7) not staying the robbery sentence; and (8) imposing consecutive sentences. Defendants contend that the cumulative effect of the above errors prejudiced them. Finally, defendants ask us to independently review sealed mental health evaluations.

We have reviewed the sealed mental health evaluations and find no error in the trial court's failure to disclose them to defense counsel. As we shall explain, the trial court improperly instructed the jury as to the street terrorism charge and the gang

enhancements.  Accordingly, the street terrorism charge and the gang enhancements attached to the remaining charges are reversed and the matter is remanded for resentencing.  We reject defendants' remaining claims of error.  Because there were no individual errors, there is no cumulative error and we need not address this claim.

FACTUAL AND PROCEDURAL BACKGROUND

On an evening in April 2012, Perez and Buchanan were driving around in Buchanan's Chevy Impala when Buchanan decided to purchase marijuana from Juwan Carter.  After arriving at a residence in Temecula, Buchanan got out of the Impala and Perez stayed inside.  Carter and Buchanan discussed marijuana quality and prices and Carter then left for a couple of minutes.

Carter returned in a Dodge Charger driven by Stoltz.  Carter sat in the back of the Charger and Newsome was the front passenger.  Carter had Buchanan get into the backseat of the Charger.  Stoltz, Newsome and Carter each pointed a gun at Buchanan.  Carter and Stoltz demanded money and told Buchanan, "We're Yarbrough Park Crips and we kill people."  Carter and Stoltz searched Buchanan's pockets.  Stoltz took Buchanan's wallet and Carter took Buchanan's wristwatch and a few dollars.  Carter and defendants then walked Buchanan back to the Impala at gunpoint.

Buchanan ran toward the Impala and yelled at Perez to drive.  Buchanan got into the Impala and Perez sped off.  Stoltz followed in the Charger with Newsome and Carter.  Gunfire erupted from the Charger with some bullets hitting the Impala.  Eventually, a police car pulled over the Impala.

3

In the meantime, Stoltz turned the Charger into a residential neighborhood, Carter got out of the car, wrapped the three guns in his jacket and hid them in a bush. Another police car later pulled over the Charger. Among other things, police found Buchanan's wallet in the backseat of the Charger. There were also entry and exit bullet holes on the driver's side hood of the Charger. No weapons were found inside the Charger. At an in-field lineup, Buchanan identified Stoltz as the driver of the Charger and Carter as the man in the backseat. Buchanan could not identify Newsome. Police found multiple bullet holes in the Impala. After being taken into custody, Carter led police to the guns. The police found the guns wrapped in a sweater underneath a bush.

DISCUSSION

I. *Admission of Buchanan's Prior Testimony*

A. Background

The prosecution moved in limine to have Buchanan declared unavailable and to admit his preliminary hearing testimony. At the Evidence Code section 402 hearing, Terese Workman and Todd Marty from the Riverside County District Attorney's Office testified. With trial scheduled to begin the following month, Workman received Buchanan's subpoena on December 10, 2013. After determining that Buchanan did not have a criminal history, she searched the DMV system and located an address. The following day, she went to the address and spoke to Buchanan's father. Buchanan's father did not know where Buchanan lived. Workman checked for Buchanan on another law enforcement system and on Facebook. She identified Buchanan's girlfriend, Janee

4

Brewton, and a former employer and located an address in San Diego. The former employer did not have a forwarding address or contact information for Buchanan.

On December 26, 2013, Workman visited Buchanan's mother and grandmother at a residence in Murrieta. She learned that Buchanan had been at the home the previous day to celebrate Christmas, but left that same day. Buchanan's mother did not have an address for him. Buchanan's mother said she would call Buchanan and his girlfriend and leave a message, telling him to call Workman.

On January 16, 2014, Marty checked an address where one of Buchanan's relatives might have been living. Marty located Brewton at another address, who called Buchanan on her cell phone while Marty was there. Marty talked to Buchanan on Brewton's cell phone. Buchanan told Marty that he was in Avondale, Arizona. Buchanan gave Marty two cell phone numbers and his address in Rancho, California. When Marty tried to contact Buchanan, the numbers that Buchanan had given him were out of service. Marty called Brewton twice and left two messages, but he never heard back from her. Marty went to the address in Rancho, California, but the residents did not know Buchanan. Marty discovered that Buchanan had a court hearing scheduled in January. Marty called the court's reference phone number for Buchanan and spoke to Buchanan who said he was still in Arizona and did not want to testify. Marty ran checks on two license plate numbers associated with Buchanan, but they both came back negative.

After hearing argument from counsel, the trial court ruled that Buchanan was unavailable and allowed the prosecution to present Buchanan's prior testimony. The

5

court directed the District Attorney's office to make efforts to locate Buchanan in Arizona and to try and contact Buchanan if he showed up for his scheduled court appearance.

Buchanan did not show up for his scheduled court appearance. Workman testified that she had attempted to contact Buchanan in Avondale, Arizona by calling the Avondale Police Department, but it had no record of him. She also checked a database for information on an Arizona address for either Buchanan or his possible associates, but found nothing. Workman called the phone number where Marty had previously reached Buchanan, but it was no longer in service.

Defense counsel renewed their objection to Buchanan's preliminary hearing testimony being read into the record. The court, however, confirmed its prior ruling.

B. Analysis

Defendants contend the prosecutor failed to show due diligence in attempting to locate Buchanan and claim the court's admission of Buchanan's preliminary hearing testimony violated their Sixth Amendment right to confrontation. We disagree.

A criminal defendant has a constitutional right to confront prosecution witnesses, but the right is not absolute. (*People v. Cromer* (2001) 24 Cal.4th 889, 892.) "An exception exists when a witness is unavailable and, at a previous court proceeding against the same defendant, has given testimony that was subject to cross-examination." (*Ibid.*) Under this exception, the preliminary hearing testimony of an unavailable witness may be admitted at trial without violating a defendant's confrontation right. (*People v. Herrera* (2010) 49 Cal.4th 613, 621; Evid. Code, § 1291, subd. (a)(2).) A witness is unavailable when the witness is absent from the hearing and the proponent of the witness's testimony

6

has exercised reasonable diligence, but has been unable to procure the witness's attendance by the court's process. (Evid. Code, § 240, subd. (a)(5).) We independently review the prosecution's claim of good faith and reasonable diligence. (*People v. Herrera*, at p. 623.) Factors we consider in determining whether the prosecutor has shown reasonable diligence include the timeliness of the search, the importance of the witness's testimony, and whether leads to the witness's possible location were reasonably explored. (*People v. Thomas* (2011) 51 Cal.4th 449, 500.)

On October 22, 2013, the court set the matter for trial on January 9, 2014. The prosecution began looking for Buchanan on December 10, 2013, 42 days before trial started on January 21. Defendants complain the prosecution presented no evidence it communicated with Buchanan after the preliminary hearing and did not timely begin its search for Buchanan as it knew Buchanan was a reluctant witness.

A prosecutor is not required " 'to keep "periodic tabs" on every material witness in a criminal case,' " but must take adequate preventative measures to stop a witness from disappearing when the prosecutor has knowledge of a substantial risk that an important witness will flee. (*People v. Friend* (2009) 47 Cal.4th 1, 68.) Here, the evidence shows Buchanan voluntarily appeared at the preliminary hearing with the enticement that the car impounded after the incident would then be released if he cooperated. Thus, while Buchanan can be described as a reluctant witness, the prosecutor had no obligation to keep in periodic contact with him, and defendants pointed to no evidence in the record suggesting the prosecutor had knowledge of a substantial risk that Buchanan would disappear.

Moreover, the prosecution started searching for Buchanan 42 days before the scheduled trial date, this does not constitute an unreasonable delay. (*People v. Fuiava* (2012) 53 Cal.4th 622, 675-676 [search for witness reasonably commenced two weeks before the start of trial].) Significantly, there is no indication in the record that starting the search earlier would have made any difference in the prosecution's ability to procure Buchanan's attendance at trial. Not discussed by defendants is the fact that the prosecution investigators spoke to Buchanan, who indicated he was in Avondale, Arizona and did not want to come to court to testify. At that time, Buchanan provided an address in Rancho, California that turned out to be false. Buchanan refused to disclose where he was staying in Arizona or who he was staying with.

While it appears Buchanan came to court on another matter, there is no indication the prosecution had any advance knowledge he would appear as the record shows he could have added himself to the calendar by calling, faxing or having an attorney appear. When the prosecution learned that Buchanan had a scheduled court date, it had investigators waiting for him, but he never appeared. The prosecution searched for Buchanan in Arizona by calling the Avondale Police Department and checking a database for an address or possible associates, but had no success. Defendants note that Buchanan appeared at his parents' home on Christmas day and criticize the prosecution for not having investigators waiting there. That day, however, Buchanan could have been with his girlfriend and child in San Diego. " 'The law requires only reasonable efforts, not prescient perfection.' " (*People v. Diaz* (2002) 95 Cal.App.4th 695, 706.)

"[W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence . . . but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." (*Hardy v. Cross* (2011) __ U.S. __ [132 S.Ct. 490, 495].) It is speculative to assume that if the prosecution had pursued any other leads, it would have procured Buchanan's presence at trial. Buchanan failed to appear for a scheduled court date and there is no guarantee that, even if the prosecution had served him with a subpoena, he would have appeared for trial given Buchanan's statement that he did not want to testify. It seems Buchanan "purposely made [him]self unavailable because [he] was unwilling to testify." (*People v. Diaz*, *supra*, 95 Cal.App.4th at p. 706.)

We reject Newsome's suggestion that he had a different interest and motive in cross-examining Buchanan at the preliminary hearing than at trial and his criticism that counsel did not explore all credibility issues at the preliminary hearing. The trial court here could have reasonably concluded that defendants had much the same interest, motive, and opportunity to cross-examine Buchanan at the preliminary hearing as at trial. (*People v. Valencia* (2008) 43 Cal.4th 268, 294 [interest and motive to cross-examine need not be identical, only " 'similar' "].) That Newsome would have preferred more cross-examination during the preliminary hearing is not the test of confrontation. (*People v. Carter* (2005) 36 Cal.4th 1114, 1173-1174.)

The totality of the circumstances support the conclusion that the prosecution exercised reasonable diligence to locate Buchanan; accordingly, the trial court did not err in allowing Buchanan's preliminary hearing testimony to be read to the jury.

## II. *Accomplice Corroboration*

### A. Background

Carter testified that he was currently in custody for attempted murder arising from the incident and he had an agreement to testify truthfully in exchange for a sentence of 18 years in prison. Carter claimed that he had intended to sell Buchanan $2,000 worth of cocaine that had been cut with baking soda. Via text message, Carter and Stoltz agreed to a plan for Buchanan. Carter had Stoltz bring a gun for himself and a .25 caliber handgun for Carter. Stoltz picked Carter up in a Charger. Newsome was in the front passenger seat and Carter sat in the backseat. Carter had the .25 caliber gun in his pocket. Newsome had a .380 caliber gun and Stoltz had a .45 caliber gun.

Buchanan got into the Charger and claimed he did not have any money. The three men then pulled out their guns and pointed them at Buchanan's head. Buchanan told Carter the money was in his car. Carter and Stoltz took Buchanan's wallet and watch, and Carter ordered Buchanan out of the car. Buchanan ran to the Impala and the car took off. Carter, Stoltz, and Newsome gave chase in the Charger. Carter and Stoltz fired their guns at the Impala. Newsome tried to fire his gun but it had jammed and he could not clear the jam. After police pulled over the Impala, Stoltz turned into a residential neighborhood. Newsome and Stoltz handed Carter their guns and Carter put all three guns in his jacket and put the jacket with the guns in a bush.

B.  Analysis

Defendants contend their attempted murder convictions must be reversed because these convictions were based upon Carter's uncorroborated accomplice testimony that defendants fired a gun or attempted to fire a gun at Perez and Buchanan.  We disagree.

A conviction cannot be based only on accomplice testimony.  (Pen. Code, § 1111; undesignated statutory references are to the Penal Code.)  There must be sufficient corroborating evidence that "shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."  (*Ibid*.)  The requisite corroboration "must, without aid from the accomplice's testimony, connect the defendant to the charged offense, but may be circumstantial, slight and entitled to little consideration when standing alone.  [Citations.]  Corroborating evidence need not be sufficient to establish the defendant's guilt or corroborate the accomplice to every fact to which the accomplice testified.  [Citations.]  It must raise more than a suspicion or conjecture of guilt, and is sufficient if it connects the defendant with the crime in such a way as to reasonably satisfy the trier of fact as to the truthfulness of the accomplice."  (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1177-1178.)  Unless we determine "that the corroborating evidence should not have been admitted or that it could not reasonably tend to connect a defendant with the commission of a crime, the finding of the trier of fact on the issue of corroboration may not be disturbed on appeal."  (*People v. Falconer* (1988) 201 Cal.App.3d 1540, 1543.)

11

Carter testified that Stoltz fired a .45 caliber gun at the victims and Newsome attempted to fire a .380 caliber gun at the victims, but the gun had jammed. Carter further testified that Stoltz and Newsome handed him their guns after the shooting and Carter wrapped these guns along with the .25 caliber gun he had used in his jacket and put them underneath a bush in the area near the shooting. Applying the above principles, we find the following evidence sufficient to corroborate Carter's accomplice testimony regarding defendants' involvement in the attempted murders of Buchanan and Perez.

A deputy testified that he took Buchanan to an infield lineup after the incident and Buchanan positively identified Stoltz as the driver of the Charger. Another deputy testified that Stoltz was in the driver's seat of the Charger after the incident. Buchanan testified that Stoltz and Newsome pointed their guns at his face while they robbed him in the Charger.

A deputy testified that bullet holes in the Charger were consistent with the driver, Stoltz, sticking his arm out of the window and firing a gun hitting the hood of the Charger with the bullet then exiting out through the Charger's grill. A bullet hole in the trunk area of the Impala appeared to be from a .45 caliber gun. After the incident, Carter led deputies to the bush where he had hidden the guns. The guns, which had been wrapped in a sweater, were a .45 caliber Taurus, a .25 caliber Sundance, and a .380 caliber gun of an undetermined brand. The recovered .380 caliber gun had unexpended ammunition in its magazine and a bullet in its chamber.

Thus, excising Carter's accomplice testimony, we are convinced there was sufficient independent evidence to connect defendants with the commission of the attempted murders.

III. *Alleged Instructional Error*

A.  Gang Related Instructions

1.  Background

Defendants were charged with street terrorism and it was alleged that they committed the other crimes to benefit a criminal street gang.  At trial, a gang expert testified that in 2006, Yarborough Park Crips gang members Alazado Tuaolo and Nicholas Shipman pleaded guilty to, respectively, grossly negligent discharge of a firearm and residential burglary and both admitted committing the crimes to benefit a gang.

The trial court instructed the jury as to the elements of the gang enhancement and the substantive street terrorism charge.  The instructions defined a "pattern of criminal gang activity" for the jury as the commission of "two or more" of the following crimes. The instructions listed "burglary" and "grossly negligent discharge of a firearm and admit crime was committed for the benefit of a criminal street gang" as the crimes that could constitute a pattern of criminal gang activity.

2.  Analysis

Defendants contend the trial court erroneously included grossly negligent discharge of a firearm as a pattern offense.  The People concede the trial court erroneously included this crime as a pattern offense, but assert the error was harmless because the current offenses qualified as pattern offenses.  The People contend the evidence and resulting convictions showed defendants committed two pattern offenses as

13

enumerated in section 186.22, subdivision (e), namely, robbery and discharging a weapon at a motor vehicle.  We disagree that the error was harmless.

"When one of the theories presented to a jury is legally inadequate, such as a theory which ' "fails to come within the statutory definition of the crime" ' [citation], the jury cannot reasonably be expected to divine its legal inadequacy.  The jury may render a verdict on the basis of the legally invalid theory without realizing that, as a matter of law, its factual findings are insufficient to constitute the charged crime.  In such circumstances, reversal generally is required unless 'it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory.' " (*People v. Perez* (2005) 35 Cal.4th 1219, 1233; see also *Griffin v. United States* (1991) 502 U.S. 46, 59; *People v. Guiton* (1993) 4 Cal.4th 1116, 1128.)

The jury convicted defendants of robbery and discharging a weapon at a motor vehicle, two crimes enumerated in section 186.22, subdivision (e) as pattern offenses. The jury instructions, however, directed the jury that a "pattern of criminal gang activity" meant the commission of "two or more of the following crimes," either "burglary" or "grossly negligent discharge of a firearm and admit crime was committed for the benefit of a criminal street gang."  The court never instructed the jury that it could consider robbery or discharging a weapon at a motor vehicle as pattern offenses.

Thus, the jury instructions for the gang enhancements and street terrorism charge in this case permitted the jury to convict defendants of street terrorism and find true the gang enhancements on an improper legal theory.  Reversal is required because there is nothing in the record to establish that the jury necessarily rejected the improper legal

theory and instead convicted defendants on a proper theory. Accordingly, the street terrorism convictions in count 5 and the true findings on the gang enhancements connected to counts 1, 2, 3 and 4 must be reversed and the matter remanded for resentencing.

## B. Unanimity Instruction

### 1. Background

Stoltz took Buchanan's wallet and Carter took Buchanan's wristwatch and a few dollars. Inside the wallet, Buchanan had about $60 to $80, his social security card, a gift card from McDonald's and other items. During a subsequent search of the backseat of the Charger, police found Buchanan's empty wallet and the McDonald's gift card.

### 2. Analysis

Defendants contend that based on varying testimony as to what was taken from Buchanan while he was in the Charger, either the prosecutor should have made an election or the trial court erred in failing to give the jury a unanimity instruction with regard to the robbery charge. We disagree.

A defendant's constitutional right to a unanimous jury verdict requires that when the evidence shows more than one unlawful act that could support a single charged offense, the prosecution must either elect which act it is relying upon, or the trial court must instruct the jurors sua sponte that they must unanimously agree which act constituted the crime. (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) A unanimity instruction is not required, however " 'when the acts are so closely connected as to form part of one transaction.' " (*Ibid.*) " 'We review de novo a claim that the trial court failed

15

to properly instruct the jury on the applicable principles of law.' " (*People v. Lueth* (2012) 206 Cal.App.4th 189, 195.)

Here, although the evidence shows Stoltz took Buchanan's wallet, which contained multiple items, while Carter took Buchanan's wristwatch, the evidence described one continuous course of conduct that lasted only a few minutes. Thus, no unanimity instruction was required. (*People v. Curry* (2007) 158 Cal.App.4th 766, 782 [where defendant took victim's shoes and phone almost simultaneously during an assault, the takings formed a single incident of robbery]; *People v. Haynes* (1998) 61 Cal.App.4th 1282, 1296 [robbery in which defendant stole some of victim's cash, then drove to another location and stole more money; no unanimity instruction required].)

C. Attempted Murder Instruction

The jury found Newsome guilty of attempting to murder Buchanan and Perez. The court instructed the jury it could find Newsome guilty as an aider and abettor under the natural and probable consequences doctrine. Newsome contends the instructions were deficient under *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), which held an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine. (*Id.* at p. 166.) Newsome asserts *Chiu* is equally applicable to attempted first degree murder, otherwise a defendant can serve a life sentence without a jury finding either a personal intent to kill or premeditation. Because the verdict does not reflect under what theory or theories the jury found true beyond a reasonable doubt, Newsome contends his attempted murder conviction must be reversed. Newsome acknowledges *People v. Favor* (2012) 54 Cal.4th 868 (*Favor*) undercuts his

16

argument, but asserts *Favor* presented a different question and *Chiu* cannot be read as an endorsement of *Favor*. We reject Newsome's argument. To the extent Stoltz joins in this argument, our discussion is equally applicable to him.

In *Favor*, our high court held that an aider and abettor may be found to have committed an *attempted murder* with premeditation and deliberation on the basis of the natural and probable consequences doctrine. (*Favor*, *supra*, 54 Cal.4th at p. 872.) In *Chiu*, our high court acknowledged this holding when considering the question of how to instruct the jury on aider and abettor liability for *first degree premeditated murder* under the natural and probable consequences doctrine. (*Chiu*, *supra*, 59 Cal.4th at p. 162.) *Chiu* held that an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine, but may be convicted of first degree premeditated murder based on direct aiding and abetting principles. (*Id.* at pp. 158-159.) Our high court limited its ruling in *Chiu* to first degree premeditated murder (*Ibid.; id.* at pp. 166-167), and contrasted this holding with its ruling in *Favor*, in which it held that an aider and abettor may be found to have committed an attempted murder with premeditation and deliberation on the basis of the natural and probable consequences doctrine (*Favor*, at p. 872; *Chiu*, at pp. 162-163). Because Newsome's convictions were for *attempted* murder with premeditation, under principles of stare decisis we are bound to follow *Favor*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

D. Willfulness Allegation

The jury found Newsome guilty of two counts of attempted murder and found true the allegations that he committed the attempted murders willfully, deliberately, and with premeditation within the meaning of section 664, subdivision (a) (the willfulness allegation). Newsome notes that the aiding and abetting instructions for the attempted murder charges omitted any requirement that the jury find the willfulness allegations to be the natural and probable consequence of aiding and abetting an attempted murder. Newsome concedes that the jury instructions conformed with the decision in *Favor*, *supra*, 54 Cal.4th 868, but asserts they were nonetheless erroneous under federal law, asserting the reasoning of *Favor* was implicitly rejected in *Alleyne v. United States* (2013) ____U.S. _____ [133 S.Ct. 2151] (*Alleyne*). He claims the jury instructions resulted in the jury finding true the willfulness allegations without finding true beyond a reasonable doubt all the facts required for such a finding as required by *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). Accordingly, he asserts the true finding on the willfulness allegations must be reversed. We reject Newsome's argument. To the extent Stoltz joins in this argument, our discussion is equally applicable to him.

Under the jury instructions, which defendants concede conformed to *Favor*, the trial court instructed the jury on the crime of attempted murder and on the natural and probable consequences doctrine; namely, to find defendants guilty of attempted murder, the jurors must find, among other things, that defendants aided and abetted the robbery and that attempted murder was a natural and probable consequences of the robbery. If the jurors found defendants guilty of attempted murder, they were then required to determine whether the attempted murder was willful, deliberate and premeditated.

18

Defendants complain that the instructions omitted any requirement that the jury find the willfulness allegations to be the natural and probable consequence of aiding and abetting an attempted murder, noting that a true finding on the willfulness allegations increased their sentences. Newsome argues he intended to commit a robbery, not attempted murder, and there was meager evidence he, Carter and Stoltz deliberated or premeditated when they began shooting or attempting to shoot.

While defendants are correct that a true finding on the willfulness allegations increased their sentences, there is no support in the law or logic that the jurors were required to find that a willful, deliberate, and premeditated attempted murder was the natural and probable consequence of robbery in order to find true the willfulness allegations. First, defendants were not found guilty of the crime of willful, deliberate, and premeditated attempted murder as there is no such crime. (*Favor*, *supra*, 54 Cal.4th at pp. 876-877 [attempted murder is not divided into degrees and premeditated attempted murder is not a separate offense from attempted murder].) Rather, the jury found defendants guilty of attempted murder and it then found true the *separate* penalty provision (§ 664, subd. (a)) that the attempted murders were willful, deliberate and premeditated. (*Favor*, at pp. 877, 879-880.)

As the *Favor* court explained, "under the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of

19

the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation." (*Favor*, *supra*, 54 Cal.4th at p. 880.)

*Alleyne* does not overrule *Favor*. In *Alleyne*, the United States Supreme Court explained that first degree murder would necessarily constitute a separate offense from second degree murder: "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact *necessarily forms a constituent part of a new offense* and must be submitted to the jury." (*Alleyne*, *supra*,___ U.S. ___ [133 S.Ct. 2151, 2162], italics added.) This holding is based on *Apprendi*, *supra*, U.S. 466, in which the court held that any fact which increases the maximum penalty for a crime is an element of the offense that must be found true by a jury beyond a reasonable doubt. (*Alleyene*, at p. ___ [133 S.Ct. at pp. 2155-2158].) As we explained above, willful, deliberate, and premeditated attempted murder is not a crime and the jurors were properly instructed as to the crime of attempted murder and the separate willfulness allegations. Accordingly, we reject defendants argument that the jurors were required to find that the willfulness allegation was a natural and probable consequence of aiding and abetting an attempted murder.

E. Credibility Instruction

1. Background

CALJIC No. 2.20 instructed the jury that "[i]n determining the believability of a witness you may consider anything that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness," including whether a witness is testifying under a grant of immunity. The instruction also told the jury that it was not limited to the factors

listed in the instruction to determine witness credibility. Newsome requested the trial court modify CALJIC No. 2.20 to include a reference to Carter's plea agreement. The trial court denied the request and instructed Newsome's counsel that he could argue the effects of Carter's plea agreement.

2. Analysis

Defendants assert the trial court erred in refusing to instruct the jury it could consider Carter's plea bargain in assessing Carter's credibility. They contend the court's refusal to instruct on Carter's plea bargain forced trial counsel to argue Carter was discredited without the benefit of a correct instruction authorizing jurors to do so. Defendants assert they were entitled upon request to an instruction pinpointing the theory of the defense, namely, that Carter should not be believed. They argue that the failure to inform jurors they could and should consider Carter's plea bargain in determining his credibility deprived them of their federal constitutional rights, and therefore the judgments of guilt must be reversed because the error was not harmless beyond a reasonable doubt. The trial court did not err in refusing the requested modification.

A defendant is entitled to an instruction which pinpoints a defense theory. (*People v. Wharton* (1991) 53 Cal.3d 522, 570.) Such an instruction is one which "pinpoints the evidence in the case in the light of defendant's theory of defense and instructs the jury that the People bear the burden of ultimate persuasion on the issue which the instruction pinpoints." (*People v. Brady* (1987) 190 Cal.App.3d 124, 135.) A court is not required to give a pinpoint instruction that is argumentative, duplicative, or not supported by the evidence. (*People v. Bolden* (2002) 29 Cal.4th 515, 558-559.) A trial court can also

21

refuse instructions that highlight specific evidence because such an instruction " 'invite[s] the jury to draw inferences favorable to one of the parties from specified items of evidence,' it is considered 'argumentative' and therefore should not be given." (*People v. Earp* (1999) 20 Cal.4th 826, 886.)

Proper instructions do not pinpoint specific evidence, but rather the theory of the defendant's case. (*People v. Wright* (1988) 45 Cal.3d 1126, 1137.) "[I]nstructions that attempt to relate particular facts to a legal issue are generally objectionable as argumentative [citation], and the effect of certain facts on identified theories 'is best left to argument by counsel, cross-examination of the witnesses, and expert testimony where appropriate.' " (*People v. Wharton*, *supra*, 53 Cal.3d at p. 570.) We review de novo the trial court's refusal to give a requested pinpoint instruction. (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.) In doing so, we consider the instructions as a whole and assume that the jurors are intelligent persons who are capable of understanding and correlating all jury instructions. (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

Here, the request to instruct on Carter's plea bargain highlighted specific evidence (Carter's plea bargain) and invited the jury to draw the inference that Carter was not a credible witness based on this specific evidence. The trial court properly rejected the proposed pinpoint modification as argumentative. The requested instruction was also duplicative of CALJIC No. 2.20 which instructed the jury it could consider "anything" tending to prove or disprove the truthfulness of a witness. (*People v. Clark* (2011) 52 Cal.4th 856, 975 ["The court properly may refuse a proposed instruction . . . when the point is covered in another instruction."].)

Even assuming defendants were entitled to the instruction, any error in not giving it was harmless. In evaluating the impact of the trial court's refusal to give a pinpoint instruction, we consider " 'the entire cause, including the evidence,' " defense counsel's focus in closing argument on the evidence supporting the defense theory, and whether any given instructions would have precluded the jury "from giving that evidence its due weight." (*People v. Wharton*, *supra*, 53 Cal.3d at pp. 571-572.) We review the erroneous failure to give a pinpoint instruction for prejudice under the *Watson* harmless error standard. (*Id.* at p. 571; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

First, the absence of a specific reference to the plea bargain in CALJIC No. 2.20 did not preclude consideration of that factor as the instruction expressly permitted the jury to consider anything in evaluating the truthfulness of a witness, including but not limited to the factors listed. Additionally, the trial court thoroughly instructed the jury on the requirement of corroboration for accomplice testimony and to view such testimony with caution. (CALJIC Nos. 3.11, 3.12, 3.18.) Moreover, trial counsel for both defendants cross-examined Carter about the plea bargain. Both counsel also argued to the jury that the plea bargain Carter had with the prosecution was incentive for Carter to lie and provided a reason to question Carter's credibility.

In summary, the jury instructions, taken as a whole, and considered in conjunction with counsel's argument to the jury, adequately informed the jury of its responsibility to consider all relevant factors in assessing witness believability. Thus, even assuming the trial court erred, the error was harmless.

IV. *Alleged Sentencing Error*

A. Background

The jury convicted defendants of two counts each of second degree robbery of Buchanan and attempting to murder Buchanan and Perez and found true the attached willfulness allegations to the attempted murder charges. The trial court sentenced Stoltz to a consecutive term of 13 years for the robbery, consisting of the middle term of three years, plus 10 years for the associated gang enhancement. Citing the probation officer's report, the trial court declined to stay the robbery sentence under section 654, but stayed the sentences for shooting at an occupied vehicle and street terrorism.

The trial court sentenced Newsome to a consecutive term of 20 years for the robbery, consisting of the upper term of five years, doubled under the "Three Strikes" law, plus 10 years for the associated gang enhancement. The trial court imposed sentence on the robbery charge without mentioning section 654. Citing section 654, the court stayed Newsome's sentences for shooting at an occupied vehicle and street terrorism.

B. Robbery Sentence

Defendants contend the trial court erred in not staying the sentence for the robbery and the gang enhancement attached to that crime under section 654 because they had a singular objective that evening, i.e., to relieve Buchanan of his $2,000—either by fraud or by force. They contend the attempted murder and robbery charges all arose from a single physical act, the shooting spree relating to the foiled robbery; thus, section 654 applies to bar separate punishment for the robbery. We disagree.

Section 654 prohibits punishment for two crimes arising from an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294.) If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. (*People v. Beamon* (1973) 8 Cal.3d 625, 639 & fn. 11; *People v. Felix* (2001) 92 Cal.App.4th 905, 915 ["multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm"].) "Because of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an 'act or omission,' there can be no universal construction which directs the proper application of section 654 in every instance." (*People v. Beamon*, at pp. 636-637.) Accordingly, whether a course of criminal conduct is divisible presents a factual issue for the trial court, and we will uphold its ruling if supported by substantial evidence. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) If the court makes no express section 654 finding, a finding that the crimes were divisible and thus subject to multiple punishments is implicit in the judgment and must be upheld if supported by substantial evidence. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717.)

Here, defendants' act of taking Buchanan's personal property at gunpoint while Buchanan sat in the Charger completed the robbery as defendants could have simply escaped with the loot. Instead, when Buchanan then ran away and escaped in the Impala with Perez, defendants gave chase in the Charger, firing or attempting to fire their

weapons. This completed attempted murder as to Buchanan. Defendants contend they committed their actions after the robbery in the Charger to further the robbery (i.e., obtain the $2,000 purportedly in the Impala). Nonetheless, defendants' actions, while directed to one objective, involved a course of conduct divisible in time that could give rise to multiple violations and punishment. (*People v. Beamon*, *supra*, 8 Cal.3d at p. 639 & fn. 11.) Accordingly, section 654 does not apply. (*In re Jesse F.* (1982) 137 Cal.App.3d 164, 171 [assault separately punishable when committed "*after* the fruits of the robbery have been obtained"].)

Additionally, the trial court could have concluded defendants had a simultaneous objective that was independent of and not merely incidental to the robbery. Namely, Carter testified that defendants chased after the Impala because Buchanan tried to rob them, this was disrespectful and the men decided to handle it with guns. Carter asked Stoltz for permission to fire his gun because Stoltz was higher in the gang hierarchy. Carter stated that other gang members would not be expected to "back [him] up" in a one-on-one situation, but back-up would be expected in a group activity. Carter claimed, however, that because Stoltz and Newsome were older, they faced no consequences if they decided to not get involved. Thus, substantial evidence supported the court's finding that section 654 did not preclude execution of the consecutive sentences for defendants' attempted murder and robbery convictions.

C. Consecutive Sentences

Defendants contend we should remand this matter to the trial court to permit it to state its reasons for imposing consecutive sentences as to the attempted murder and

26

robbery charges. Stoltz asserts the trial court should have stated reasons as to why it was imposing consecutive as opposed to concurrent sentences on the respective counts because he had no prior criminal record, was out of custody on bond during trial and had committed no new violations. The People assert defendants forfeited this contention by failing to object below. Assuming defendants did not forfeit this contention, the People contend the record supported the court's discretionary sentencing choice.

A trial court has discretion to determine whether several sentences are to run concurrently or consecutively. (§ 669; *People v. Shaw* (2004) 122 Cal.App.4th 453, 458.) A sentencing court is required to provide a statement of reasons when imposing consecutive sentences. (Cal. Rules of Court, rule 4.406(a), (b)(5).) A defendant's claim that the trial court stated inadequate or erroneous reasons for imposing consecutive sentences is forfeited on appeal unless the defendant timely and specifically objected below on the ground sought to be raised on appeal. (*People v. Boyce* (2014) 59 Cal.4th 672, 730-731.)

Here, although defendants raised no objection below, they contend forfeiture does not apply because they were not given a meaningful opportunity to object as the trial court did not provide an intended ruling, but simply pronounced the sentences. We disagree.

A trial court is not obligated to provide advance notice of its intended sentence. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 754-755.) "[T]he parties need only be advised of the trial court's intended sentence 'during the course of the sentencing hearing itself . . . .' " (*Id.* at p. 752.) "In the rare instance where the actual sentence is

27

unexpected, unusual, or particularly complex, the parties can ask the trial court for a brief continuance to research whether an objection is warranted, or for permission to submit written objections within a specified number of days after the sentencing hearing." (*Id.* at p. 754.)

Here, before the trial court pronounced its sentences it noted that it had read the probation reports and also the letters submitted regarding Newsome's character. The court heard argument from counsel and then pronounced its respective sentences. After apprising defendants of their sentences, the trial judge asked each counsel whether he had "anything further." Both counsel responded that they had nothing further. The invitation for further input from the parties afforded defendants a meaningful opportunity to assert the objection they now attempt to raise on appeal. (*People v. Boyce*, *supra*, 59 Cal.4th at p. 731.) Their failure to act resulted in a forfeiture of the claim. (*Ibid.*)

Even if defendants had not forfeited this claim, we would deny it on the merits. California Rules of Court, rule 4.425 enumerates "[c]riteria affecting the decision to impose consecutive rather than concurrent sentences." California Rules of Court, rules 4.421 and 4.423 identify numerous aggravating and mitigating circumstances. A single valid factor is sufficient to justify a sentencing choice. (*People v. Dancer* (1996) 45 Cal.App.4th 1677, 1695-1696.)

Here, the probation reports, which the trial court considered, listed three circumstances in aggravation and two in mitigation as to Stoltz and seven aggravating and no mitigating circumstances as to Newsome. The trial court read letters about Stoltz's good character and was aware of Stoltz's age and lack of a criminal record. The

28

court also heard Stoltz's articulate statement of remorse for his crimes. The trial court stated that it considered Stoltz's age and lack of record in deciding the appropriate sentence, but concluded the gravity of the crimes outweighed these factors. As to Newsome, the trial court noted the existence of a prior strike, that Newsome was on probation at the time of the incident and the gravity of the crimes. The record shows the court was aware it had sentencing discretion and that it exercised its discretion. On whole, the trial court adequately justified the imposition of consecutive terms and did not abuse its discretion. No remand for resentencing is required.

V. *Mental Health Evaluations*

A. Background

When Carter was a co-defendant in this proceeding his counsel expressed a doubt about Carter's competency. The trial court suspended the criminal proceedings and ordered a competency evaluation under section 1368. The psychiatrist prepared a written report and the prosecutor prepared a redacted version of the report to protect Carter's personal information and attorney-client privilege. Carter was found to have been malingering and thus competent. The court ordered that the reports be sealed. The trial court had the prosecutor review the reports and provide to defense counsel all possible exculpatory evidence within the meaning of *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

Stoltz's counsel asked the trial court to unseal Carter's psychiatric reports or review them, questioning whether it had followed the proper procedures in ordering the reports sealed. Counsel also asked the trial court to review the redacted and unredacted

29

reports and decide whether the prosecutor was correct in finding no *Brady* material in the reports. The trial court reviewed the reports and concluded that they contained no exculpatory evidence. The court also denied a request to unseal the reports.

B.  Analysis

Defendants do not challenge the sealing of the reports; rather, they request that we review the sealed reports and reverse the judgment if the trial court failed to turn over any documents material to their defense, including but not limited to exculpatory evidence within the meaning of *Brady* or other material evidence subject to mandatory disclosure under section 1054.1. The People argue psychiatric material is generally undiscoverable prior to trial and we should not independently review the reports because defendants cited no authority for such a review.

Under *Brady*, the prosecution violates a defendant's federal due process rights when it suppresses evidence material to the defendant's guilt or punishment, regardless of the good faith belief of the prosecution. (*Brady*, *supra*, 373 U.S. at p. 87.)  Prosecutors have a duty to disclose "material exculpatory evidence whether the defendant makes a specific request [citation], a general request, or none at all." (*In re Brown* (1998) 17 Cal.4th 873, 879.)  An appellate court's role is to review the confidential records that were not disclosed by the trial court "to determine whether they were material and should have been disclosed." (*People v. Martinez* (2009) 47 Cal.4th 399, 453.)

On our own motion, we have augmented the record to include copies of the unredacted and redacted versions of the report. (Cal. Rules of Court, rule 8.340(c).)  The trial court properly sealed these reports and we add them to the record on appeal under

seal.  We have reviewed the unredacted and redacted versions of the report in camera and conclude the undisclosed information was not material to defendants' defense and the trial court did not err in denying disclosure.

## DISPOSITION

The street terrorism convictions (count 5) are reversed as to both defendants.  The true findings on the gang enhancements connected to counts 1, 2, 3 and 4 are reversed and the gang enhancements stricken.  In all other respects, the judgments are affirmed.  The matter is remanded for resentencing consistent with this opinion.  Thereafter, the trial court is directed to prepare amended abstracts of judgment and to send certified copies of the same to the Department of Corrections and Rehabilitation.

McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

O'ROURKE, J.

31