Opinion
CHIN, J.
In this case, a jury found defendant guilty of two counts of robbery, as an aider and abettor, and guilty of two counts of attempted murder, on the theory that the nontarget offenses of attempted murder were a natural and probable consequence of the target offenses of robbery which defendant had aided and abetted. The jury further found that the attempted murders were willful, deliberate, and premeditated, under Penal Code section *872 664, subdivision (a) (section 664(a)).[1] The statute increases the punishment for attempted murder beyond the maximum otherwise prescribed, when those findings are found true by the trier of fact.
In People v. Cummins (2005) 127 Cal.App.4th 667 [25 Cal.Rptr.3d 860] (Cummins), the Court of Appeal held that as to the premeditation allegation under section 664(a), the trial court need only instruct that the jury must find that the commission of attempted murder was a natural and probable consequence of the target crime of robbery. It need not instruct that premeditation must also be a natural and probable consequence of the robbery. (Cummins, at pp. 680-681.) On the other hand, in People v. Hart (2009) 176 Cal.App.4th 662 [97 Cal.Rptr.3d 827] (Hart), the Court of Appeal held the trial court must instruct that the jury must find that attempted premeditated murder, not just attempted murder, was a natural and probable consequence of the target offense. (Id. at p. 673.)
In a published opinion, the Court of Appeal here followed Cummins and concluded the instructions were sufficient with respect to the natural and probable consequences doctrine as applied to the premeditation allegation under section 664(a). We granted review to resolve the conflict.
We agree with Cummins and the Court of Appeal in this case that the jury need not be instructed that a premeditated attempt to murder must have been a natural and probable consequence of the target offense.
I. FACTS AND PROCEDURAL HISTORY
On November 8, 2004, defendant accompanied two companions to the A & J Liquor store, which also operated a check-cashing business. Owner Paul Lee and employees Pablo Castaneda and Jose Huerta were working. Huerta had his back turned when two or three individuals entered the store and locked the door. Huerta heard a gunshot fired from near his head, and felt its discharge bum his head. He fell to the floor and stayed there. After the shot near his head, he heard three more gunshots and a cash register being opened. One of the intruders ordered, “Get the telephone, get the cameras, and I’ll find you. You already know where.” A second person asked, “Where are the cameras?” Huerta answered that the cameras were in the back. When one of the men demanded his money, Huerta gave it to him. Huerta walked to the office in the back of the store, where the security videos were located. The man followed him, looked around inside the room, then exited the store. After the intruders left, Huerta locked the door and found that Castaneda had been shot once in the head and was dead. Lee was lying on the ground and *873 had been shot twice, once in the neck and once in the chest. Although suffering grave injury, Lee ultimately survived.
It was later determined that the robbers took between $50,000 and $70,000 from the check-cashing portion of the business, approximately $1,000 from the grocery portion of the business, as well as a mobile telephone, and prepaid telephone calling cards.
In June 2005, the police arrested defendant after a flyer was distributed, containing a photograph of defendant from the store security video. During a recorded interview, which was played at trial, defendant admitted that he went to the A & J Liquor store earlier on the day of the robbery with an ex-gang member known as “Trouble.” The two men noticed that the store was not very secure. Trouble said he would tell his partners about it, and they got on a bus to meet up with them. Defendant stated that he recognized one of the men from the streets as an active gang member. He was also fairly sure he had gone to high school with the other man, who was the shooter. Defendant described the shooter as a “shady character” who was not to be trusted.
After Trouble told the two men about the liquor store, defendant and the two men took the bus back to the store. Defendant went in the store first to see how many people were inside. Seeing nobody, he walked out. Defendant claimed that the two men then entered the store without him, and that he heard gunshots. In response to defendant’s knock, the shooter opened the door with a gun in his hand and told defendant to “get the money.” Defendant saw that several people had been shot and proceeded to take everything from the cash register. He also grabbed a mobile phone and gave it to the shooter.
However, the store’s video showed that defendant and two men entered the store together. Defendant entered first, a man wearing a security jacket entered second, and the shooter entered third.
The prosecution charged defendant with one count of first degree murder, with the special circumstance that it was committed while he was engaged in the commission of a robbery (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17)(A)), two counts of attempted murder (§§ 664, 187, subd. (a)), and two counts of second degree robbery (§ 211). The information further alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)), and that the attempted murders were committed willfully, deliberately and with premeditation. Under the prosecution’s theory at trial, defendant was guilty of first degree murder under the felony-murder rule, of robbery as an aider and abettor, and of attempted murder under the natural and probable consequences doctrine.
*874 A jury found defendant guilty as charged and the enhancement allegations to be true. The trial court imposed a sentence of life imprisonment without possibility of parole for the murder and consecutive terms of life imprisonment with the possibility of parole for the attempted murders, with an additional year on each term for the arming enhancement. It stayed the sentences for robbery.
The Court of Appeal affirmed the convictions. Relying on our decision in People v. Lee (2003) 31 Cal.4th 613 [3 Cal.Rptr.3d 402, 74 P.3d 176] (Lee) and on Cummins, supra, 127 Cal.App.4th 667, and disagreeing with Hart, supra, 176 Cal.App.4th 662, the court concluded that the trial court did not err in failing to relate the premeditation and deliberation instruction to the natural and probable consequences instruction.
We granted defendant’s petition for review.
II. DISCUSSION
Defendant contends that the willful, deliberate, and premeditated findings should be vacated. He argues that the trial court failed to instruct that the jury had to find, not only that the attempted murder was a natural and probable consequence of the robberies, but also that the perpetrator’s willfulness, deliberation, and premeditation were natural and probable consequences.
“ ‘A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor actually foresaw the additional crime, but whether, judged objectively, it was reasonably foreseeable. [Citation.]’ [Citation.] Liability under the natural and probable consequences doctrine ‘is measured by whether a reasonable person in the defendant’s position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.’ [Citation.]” (People v. Medina (2009) 46 Cal.4th 913, 920 [95 Cal.Rptr.3d 202, 209 P.3d 105]; see People v. Prettyman (1996) 14 Cal.4th 248, 254 [58 Cal.Rptr.2d 827, 926 P.2d 1013].) A reasonably foreseeable consequence is a factual issue to be resolved by the jury who evaluates all the factual circumstances of the individual case. (People v. Medina, supra, 46 Cal.4th at p. 920.)
Under the prosecution’s theory at trial, defendant was guilty of the target offense of robbery as an aider and abettor, and of the nontarget offense of attempted murder as a natural and probable consequence of the robbery. Regarding that theory, the trial court instructed (pursuant to CALCRIM *875 No. 402) as follows: “The defendant is charged in Counts 4 through 5 with robbery and in Counts 2 through 3 with attempted murder, [f] You must first decide whether the defendant is guilty of robbery. If you find the defendant is guilty of this crime, then you must decide whether he is guilty of attempted murder. [][] Under certain circumstances, a person who is guilty of one crime also may be guilty of other crimes that were committed at the same time, [f] To prove that the defendant is guilty of attempted murder, the People must prove that: [f] 1. The defendant is guilty of robbery; [f] 2. During the commission of robbery, a co-participant in that robbery committed the crime of attempted murder, and [f] 3. Under all of the circumstances, a reasonable person in the defendant’s position would have known that the commission of attempted murder was a natural and probable consequence of the commission of the robbery.”
The prosecution alleged that the attempted murder was willful, deliberate, and premeditated under the penalty provision of section 664(a). Section 664(a) provides that a defendant convicted of attempted murder is subject to a determinate term of five, seven, or nine years. However, a defendant convicted of attempted murder is subject to a sentence of life with the possibility of parole if the jury finds that the attempted murder was “willful, deliberate, and premeditated murder, as defined in Section 189.” (Ibid.)
Regarding the attempted murder/premeditation allegation, the trial court instructed (pursuant to CALCRIM No. 601) as follows: “If you find the defendant guilty of attempted murder in Count 2 and/or Count 3, then you must decide whether the People have proved the additional allegation that the attempted murder was done willfully and with deliberation and premeditation, within the meaning of Penal Code section 664(a). [][] The defendant and/or a principal acted willfully if he intended to kill when he acted. The defendant and/or a principal deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant and/or a principal premeditated if he decided to kill before acting, [f] The attempted murder was done willfully and with deliberation and premeditation if either the defendant or a principal or both of them acted with that state of mind.”
Relying primarily on Hart, supra, 176 Cal.App.4th 662, defendant argues that the trial court committed reversible instructional error by failing to instruct the jury on the natural and probable consequences doctrine as to the nontarget offense of attempted willful, deliberate, and premeditated murder.
The facts in Hart are similar to the present case. The defendant and a confederate attempted to rob a store employee, who was shot by the confederate during the commission of the offense. The store employee *876 survived. The jury found defendant guilty of attempted murder and that the attempted murder was willful, deliberate, and premeditated. One of the prosecution’s theories of guilt was that the attempted murder was a natural and probable consequence of the attempted robbery that the defendant had aided and abetted. (Hart, supra, 176 Cal.App.4th at pp. 665-668.)
Hart reversed the jury’s premeditation and deliberation finding on the attempted murder conviction because the trial court failed to instruct the jury “to find that attempted premeditated murder, not just attempted murder, was a natural and probable consequence of the attempted robbery.” (Hart, supra, 176 Cal.App.4th at p. 673.) The court noted that, although it was reasonable to infer the defendant knew his companion had a gun and intended to use it if necessary, a reasonable person in the defendant’s position may not have concluded that attempted premeditated murder would be a natural and probable result of the planned robbery. (Id. at p. 672.) Thus, “a reasonable jury could have concluded that the actual perpetrator [the companion] was guilty of attempted premeditated murder but that the aider and abettor [the defendant] was guilty of no more than attempted unpremeditated murder.” (Ibid.)
In reaching that conclusion, the Hart court relied on its previous opinion in People v. Woods (1992) 8 Cal.App.4th 1570 [11 Cal.Rptr.2d 231]. In Woods, the court held that, “[i]f the evidence raises a question whether the offense charged against the aider and abettor is a reasonably foreseeable consequence of the criminal act originally aided and abetted but would support a finding that a necessarily included offense committed by the perpetrator was such a consequence, the trial court has a duty to instruct sua sponte on the necessarily included offense as part of the jury instructions on aider and abettor liability.” (Id. at p. 1593.) Because an aider and abettor may be convicted of a lesser offense than that committed by the perpetrator, Woods concluded the trial court should have instructed that the jury could find the aider and abettor guilty of the nontarget crime of second degree murder even though the actual perpetrator was guilty of first degree murder. (Id. at pp. 1577, 1590.)
Hart’s analysis fails for two reasons. First, contrary to Hart’s presupposition, attempted premeditated murder and attempted unpremeditated murder are not separate offenses. Attempted murder is not divided into different degrees. (People v. Douglas (1990) 220 Cal.App.3d 544, 549 [269 Cal.Rptr. 579] [rejecting claim that attempted second degree murder is lesser offense included within offense of attempted willful, deliberate, and premeditated murder], cited with approval in People v. Bright (1996) 12 Cal.4th 652, 665-667 [49 Cal.Rptr.2d 732, 909 P.2d 1354] (Bright)), which we disapproved on another ground in People v. Seel (2004) 34 Cal.4th 535, 550, fn. 6 *877 [21 Cal.Rptr.3d 179, 100 P.3d 870].[2]) “[T]he provision in section 664, subdivision (a), imposing a greater punishment for an attempt to commit a murder that is ‘willful, deliberate, and premeditated’ does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder.” (Bright, supra, 12 Cal.4th at pp. 656-657].) “[T]he statutory language employed in prescribing an additional penalty for attempted murder . . . reflects a legislative intent to create a penalty provision specifying a greater term, rather than a substantive offense.” (Bright, supra, 12 Cal.4th at p. 668; see id. at p. 670 [“the division of a crime into degrees constitutes an exclusively legislative function . . .”].) Thus, “premeditated attempted murder is not a separate offense from attempted murder.” (Anthony v. Superior Court (2010) 188 Cal.App.4th 700, 706 [115 Cal.Rptr.3d 519].) Because Woods involved murder—not attempted murder—where there are different degrees of the offense, Hart’s reliance on Woods’s lesser included offense analysis is misplaced.
Second, along with failing to discuss Bright, Hart did not consider the impact of Lee, supra, 31 Cal.4th 613. In Lee, we held that the premeditation penalty provision of section 664(a) “must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an . attempted murderer personally acted willfully and with deliberation and premeditation, even if he or she is guilty as an aider and abettor.” (Lee, supra, 31 Cal.4th at p. 616.) We reasoned that section 664(a) “makes no distinction between an attempted murderer who is guilty as a direct perpetrator and an attempted murderer who is guilty as an aider and abettor” and does not require personal willfulness, deliberation, and premeditation of an attempted murderer. (31 Cal.4th at p. 623.) Thus, premeditation is not a required component of the aider and abettor’s mental state. Accordingly, we found that the trial court did not err in failing to instruct that to find the premeditation allegation to be true, the jury must find personal willfulness, deliberation, and premeditation as to an attempted murderer who is guilty as an aider and abettor. {Id. at pp. 616-617.)
We observed that the Legislature would have been justified in refusing to extend section 664(a)’s penalty provision to an aider and abettor who fails to personally act with premeditation, but did not. We reasoned that because an aider and abettor must share the specific intent of the direct perpetrator and have knowledge of the perpetrator’s criminal purpose, “the Legislature *878 reasonably could have determined that an attempted murderer who is guilty as an aider and abettor, but who did not personally act with willfulness, deliberation, and premeditation, is sufficiently blameworthy to be punished with life imprisonment.” {Lee, supra, 31 Cal.4th at p. 624.) Although Lee did not involve the natural and probable consequences doctrine, we commented in dictum that “where the natural-and-probable consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy. In light of such a possibility, it would not have been irrational for the Legislature to limit section 664(a) only to those attempted murderers who personally acted willfully and with deliberation and premeditation. But the Legislature has declined to do so.” {Id. at pp. 624-625.) Thus, we indicated that section 664(a) applies to all aiders and abettors.
Moreover, we noted that even in the case of aiders and abettors under the natural and probable consequences doctrine, punishment need not be finely calibrated to the criminal’s mens rea. It takes account of other valid penological considerations, such as the defendant’s conduct, the consequences of such conduct, and the surrounding circumstances, including the fact that the murder attempted was willful, deliberate, and premeditated. {Lee, supra, 31 Cal.4th at p. 627.)
In Cummins, supra, 127 Cal.App.4th 667, the Court of Appeal extended Lee’s analysis to the natural and probable consequences doctrine. There, the defendant and a companion robbed and carjacked a driver, then either the defendant or his companion pushed the victim off a cliff. The jury found defendant guilty of attempted murder as an aider and abettor under the natural and probable consequences doctrine and found the premeditation allegation to be true. Noting that the defendant “was a willing and active participant in all the steps that led to the attempt on [the victim’s life],” the court concluded, “We see no reason, under the facts of this case, to depart from the reasoning of the Lee court in a situation that applies the natural and probable consequences doctrine.” (Id. at p. 680; see People v. Curry (2007) 158 Cal.App.4th 766, 792 [70 Cal.Rptr.3d 257] [agreeing “that Lee should apply in a case involving the natural and probable consequences doctrine”].)
The Court of Appeal in this case correctly followed Cummins and disagreed with Hart. As the Court of Appeal noted, we “observed in Lee, [that] the Legislature declined to make a distinction in the findings necessary for perpetrators or for aiders and abettors in Penal Code section 664, subdivision (a).” We further indicated that the Legislature, in adding section 664(a)’s penalty provision, made no distinctions between aiders and abettors in general and those guilty under the natural and probable consequences doctrine. (Lee, supra, 31 Cal.4th at pp. 624-625.) As the Attorney General points out, since Lee, the Legislature has not modified the premeditation *879 penalty provision in section 664(a), although it has modified subdivision (a) and other subdivisions of section 664 in other respects. “[W]hen as here ‘ “a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.” [Citations.] “There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts.” ’ ” (People v. Meloney (2003) 30 Cal.4th 1145, 1161 [135 Cal.Rptr.2d 602, 70 P.3d 1023].)
As noted above, Hart's analysis rested on the distinction between greater and lesser included offenses in general and on the general rule that a trial court has a duty to instruct on lesser included offenses if the evidence supports a conviction on the lesser offense. However, Hart's reliance on the principles relating to lesser included offenses is inapplicable in light of Bright, supra, 12 Cal.4th 652, and Lee, supra, 31 Cal.4th 613. Attempted premeditated murder is not a greater offense or degree of attempted murder. (Bright, supra, 12 Cal.4th at pp. 656-657, 668.) Thus, Hart incorrectly concluded that an actual perpetrator can be guilty of attempted premeditated murder, while the aider and abettor can be guilty of the lesser offense of attempted unpremeditated murder. (Hart, supra, 176 Cal.App.4th at p. 672.) Moreover, Lee refutes Hart's underlying premise that an aider and abettor would be less culpable than the direct perpetrator if he or she did not personally act with premeditation and deliberation. As we explained in Lee, an aider and abettor need not share the heightened mental state of the direct perpetrator for the applicability of section 664(a)’s penalty provision. (Lee, supra, 31 Cal.4th at pp. 621-622.) Once the jury finds that the murder attempted was deliberate and premeditated, both the direct perpetrator and the aider and abettor are subject to section 664(a)’s penalty provision. (Lee, at pp. 621-622.) The Court of Appeal correctly declined to follow Hart.[3]
Because section 664(a) “requires only that the attempted murder itself was willful, deliberate, and premeditated” (Lee, supra, 31 Cal.4th at p. 626), it is only necessary that the attempted murder “be committed by one of the perpetrators with the requisite state of mind.” (Cummins, supra, 127 Cal.App.4th at p. 680.) Moreover, the jury does not decide the truth of the penalty premeditation allegation until it first has reached a verdict on the substantive offense of attempted murder. (Bright, supra, 12 Cal.4th at p. 661.) Thus, with respect to the natural and probable consequences doctrine as applied to the premeditation allegation under section 664(a), attempted murder—not attempted premeditated murder—qualifies as the nontarget offense to which the jury must find foreseeability. Accordingly, once the jury *880 finds that an aider and abettor, in general or under the natural and probable consequences doctrine, has committed an attempted murder, it separately deterines whether the attempted murder was willful, deliberate, and premeditated.
Under the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation.
III. DISPOSITION
We affirm the judgment of the Court of Appeal.
Cantil-Sakauye, C. J., Baxter, J., Werdegar, J., and Corrigan, J., concurred.

 All further statutory references are to the Penal Code.

 In People v. Seel, supra, 34 Cal.4th at page 539, we held that because section 664(a)’s penalty provision exposes a defendant to a greater punishment than that authorized by a jury’s guilty verdict of attempted murder, it is the “ ‘functional equivalent of an element of a greater offense than the one covered by the jury’s guilty verdict’ ” for purposes of federal double jeopardy protection. (See Seel, at pp. 547-548; see also Apprendi v. New Jersey (2000) 530 U.S. 466, 494, fn. 19 [147 L.Ed.2d 435, 120 S.Ct. 2348].)

 We disapprove People v. Hart, supra, 176 Cal.App.4th 662, to the extent it is inconsistent with this opinion.