Filed 10/8/19 (unmodified opinion and modification order attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESUS HUMBERTO MEJIA,<br><br>    Defendant and Appellant. | G052967<br><br>(Super. Ct. No. 09CF3083)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on September 18, 2019, modified on October 8, 2019, be further modified as follows:

On the first page, delete from the list of attorneys the name Kimberly A. Donohue, and in its place insert Kimberley A. Donohue.

This modification does not change the judgment.


O'LEARY, P. J.

I CONCUR:


IKOLA, J.

Filed 10/8/19 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G052967 |
|      v. | (Super. Ct. No. 09CF3083) |
| JESUS HUMBERTO MEJIA, | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
|    Defendant and Appellant. | |

It is ordered that the opinion filed on September 18, 2019, be modified as follows:

1. On the first page, delete from the list of attorneys the name Kimberly A. Donahue, and in its place insert Kimberly A. Donohue.

2. On page nine, last paragraph, the fourth sentence is modified to read in full, "Holding the aider and abettor liable for the perpetrator's mental state under the natural and probable consequences doctrine increases a maximum determinate sentence of nine years to a possible life sentence of which the defendant must serve seven years before parole consideration.  (§ 664, subd. (a).)"

These modifications do not change the judgment.


O'LEARY, P. J.

I CONCUR:


IKOLA, J.

Filed 9/18/19 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G052967 |
| v. | (Super. Ct. No. 09CF3083) |
| JESUS HUMBERTO MEJIA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge. Reversed and remanded.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Kimberly A. Donahue, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jesus Humberto Mejia of attempted premeditated murder, burglary, robbery, street terrorism, and firearm possession. The jury also returned true findings on associated weapon and street gang allegations. In bifurcated proceedings, the trial court made true findings on prior conviction allegations. Mejia contends the court improperly instructed the jury on premeditated attempted murder under the natural and probable consequences doctrine. We agree the premeditation and deliberation special finding must be reversed.

Mejia also raises sentencing issues, which the Attorney General concedes. First, we agree with the parties that the trial court erred in imposing the full 10-year sentence for the gun-use enhancement. Second, we acknowledge and agree with the parties that a recent change in the law requires that this case be remanded to allow the trial court to exercise its discretion to strike the five-year prior conviction enhancement imposed pursuant to Penal Code section 667, subdivision (a)(1).[1] Finally, we order the trial court to correct numerous clerical errors on the abstract of judgment and minute order (brought to our attention by the Attorney General). In all other respects, we affirm the judgment.

## FACTS

Mejia's primary argument in this appeal concerns instructional error related to the attempted murder conviction alleged in count 4. Accordingly, our facts focus on that crime.

Early one morning, Jose Ramirez and his wife, Alberta, heard their car alarm sounding.[2] Alberta saw a young man standing at the garage. Jose went to the garage and noticed Mejia was outside standing next to a black car talking on a cellphone. When Jose entered the garage, he saw the back passenger window of his vehicle was

---

[1]    All further statutory references are to the Penal Code, unless otherwise indicated.

[2]    For clarity we use the Ramirezs' first names. No disrespect is intended.

2

broken. He watched Francisco Rodriguez, who was inside the vehicle, attempting to remove the speakers. Jose tried to leave the garage when Rodriguez turned and pointed a shotgun at him. However, Mejia, who was now holding a pistol, ordered Jose back into the garage.

Alberta, who was standing nearby, was holding a cellphone in her hand. Mejia pointed his pistol at her and grabbed her phone. At this point, the apartment complex manager arrived and told the two culprits, "Lower your weapon. Don't be a fool. Think about what you're doing."

Rodriguez pointed his shotgun at Jose and pulled the trigger three times, but the weapon did not fire. Hearing sirens in the background, Mejia said, "Let's get out of here." The men left in the black car that had been left outside the garage.

Rodriguez and Mejia were tried as codefendants. As relevant to this appeal, the jury was instructed with CALCRIM Nos. 600 (Attempted Murder), 601 (Attempted Murder: Premeditated and Deliberation), 400 (Aiding and Abetting: General Principles), 401 (Aiding and Abetting: Intended Crimes), and 403 (Natural and Probable Consequences Doctrine).

A jury convicted Mejia of the following crimes: possession of a firearm by a felon (§ 12021, subd. (a)(1); counts 1, 11); second degree vehicle burglary (§§ 459, 460, subd. (b); count 2); second degree robbery (§§ 211, 212.5, subd. (c); count 3); attempted premeditated murder (§§ 664, subd. (a)/187, subd. (a); counts 4, 9); attempted first degree robbery (§§ 664, subd. (a), 211, 212.5, subd. (a); counts 5, 7); first degree burglary (§§ 459, 460, subd. (a); counts 6, 8); and street terrorism (§ 186.22, subd. (a); count 10). The jury found true that in counts 3 and 9, Mejia personally used a firearm during the commission and attempted commission of such offenses. (§ 12022.53, subd. (b).) As to counts 4 and 7, vicarious use of a firearm by a gang member was also found to be true. (§ 12022.53, subds. (b), (e)(1).). Many of the counts were found to have been committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) The jury

3

also found true a prior conviction qualifying as a serious felony (§ 667, subd. (a)(1)), and two prior convictions qualifying as strikes (§ 667, subds. (d), (e)(2)(A), 1170.12, subds. (b), (c)(2)(A)).

The court sentenced Mejia to an aggregate term of 44 years to life, consecutive to a determinate term of 62 years and 4 months. The court imposed the middle term of three years on count 3 (second degree robbery), enhanced by 10 years for the gang allegation, and further enhanced by 10 years for the use of a firearm; a consecutive term of 14 years to life on count 4 (attempted murder) enhanced by 10 years for the principal armed gang allegation; the middle term of two years on count 5 (robbery), plus 10 years for the gang allegation, further enhanced by 10 years for the weapon use allegation, to run consecutive to count 4; a consecutive term of eight months on count 7 (attempted first degree robbery), enhanced by 10 years for the weapon use allegation; and 30 years to life on count 9 (attempted murder), enhanced by 10 years for the weapon use allegation, to run consecutive to count 4. The court imposed an additional five year term for the prior serious felony conviction. It imposed and stayed the sentences on the remaining counts and allegations and ordered those would run concurrent with the sentence imposed on count 4.

DISCUSSION

I. *Instructional Error*

Mejia contends he was "deprived of his federal due process and fair trial rights where the jury was instructed it could find him guilty of premeditated attempted murder under the natural and probable consequences doctrine based on a codefendant's premeditation and deliberation." Mejia cites *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*) for its holding "that a first degree, premeditated and deliberate murder conviction for an aider and abettor cannot be based on the natural and probable consequence doctrine as a matter of law." He concedes the California Supreme Court in *Chiu* did not extend its holding to the crime of attempted murder. Mejia also acknowledges the Supreme Court,

4

in *People v. Favor* (2012) 54 Cal.4th 868 (*Favor*), held an aider and abettor may be found to have committed attempted murder with premeditation on the basis of the natural and probable consequences doctrine. Mejia argues there is no principled reason for any distinction between the results in *Chiu* and in *Favor*. We agree.

In *Favor,* a codefendant shot and killed an employee during the course of a robbery. (*Favor, supra,* 54 Cal.4th at pp. 873-874.) At trial, the prosecution's theory was that Favor was guilty of the target offense of robbery as an aider and abettor, and guilty of the nontarget offense of attempted murder as a natural and probable consequence of the robbery. (*Id.* at p. 874.) On appeal, Favor argued the trial court committed reversible instructional error by failing to instruct the jury that a premeditated attempt to murder must have been a natural and probable consequence of the target offense. (*Ibid.*) The court disagreed, holding, "Under the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation." (*Id.* at p. 880.)

Two justices dissented in *Favor.* The dissenting opinion of Justice Liu, joined by Justice Kennard, reasoned, "A jury finding of reasonable foreseeability provides the crucial nexus that links a defendant's culpability for aiding and abetting the target offense to his criminal liability for the nontarget offense. Without that nexus, there is no basis—no legally sufficient theory of causation—to find the defendant culpable for the nontarget offense." (*Favor, supra*, 54 Cal.4th at p. 882 (dis. opn. of Liu J.).) The dissent asserted the majority opinion "disregards the essential causal link that must exist between the charged nontarget offense and the target offense aided and abetted by defendant." (*Ibid.*) They questioned how a defendant could "be convicted of *premeditated* attempted murder on a natural and probable consequences theory when the

5

jury was never asked to determine whether *premeditated* attempted murder was a natural and probable consequence of the target offense?" (*Ibid.*)

Two years later, in the *Chiu* opinion, the Supreme Court held "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine." (*Chiu, supra*, 59 Cal.4th at pp. 159-160.) The court began by discussing the principles related to the natural and probable consequences doctrine as articulated and refined over the years in California case law. (*Id.* at pp. 161-162.) The court noted it had "not previously considered how to instruct the jury on aider and abettor liability for first degree premeditated murder under the natural and probable consequences doctrine." (*Id.* at p. 162.)

In *Chiu*, the Attorney General urged the Supreme Court to reach the same result as it had in *Favor*, but the Supreme Court declined, finding *Favor* distinguishable in several respects. (*Chiu, supra*, 59 Cal.4th at p. 163.) The court reasoned that unlike *Favor*, "the issue in the present case does not involve the determination of legislative intent as to whom a statute applies." (*Ibid.*) Additionally, it reasoned *Favor* "involved the determination of premeditation as a requirement for a statutory penalty provision," whereas here the court was now considering premeditation and deliberation as an element of first degree murder. "In reaching our result in *Favor*, we expressly distinguished the penalty provision at issue there from the substantive crime of first degree premeditated murder on the ground that the latter statute involved a different *degree* of the offense. [Citation.]" (*Ibid.*)

Lastly, the Supreme Court indicated the "consequence of imposing liability for the penalty provision in *Favor* [was] considerably less severe than in imposing liability for first degree murder under the natural and probable consequences doctrine." (*Chiu, supra*, 59 Cal.4th at p. 163.) The court discussed the significant disparity in sentences between attempted murder with deliberation and premeditation, and first degree murder. A defendant convicted of attempted murder with a true finding of

6

premeditation and deliberation "is subject to a determinate term of five, seven, or nine years" plus a "sentence of life with the possibility of parole . . . [with the defendant being] eligible for parole after serving a term of at least seven years. [Citation.]" (*Ibid.*, §§ 664 subd. (a), 3046, subd. (a)(1).) "On the other hand, a defendant convicted of first degree murder must serve a sentence of 25 years to life . . . [and] must serve a minimum term of 25 years before parole eligibility. [Citation.]" (*Chiu, supra*, 59 Cal.4th at p. 163; §§ 190, subd. (a), 3046, subd. (a)(2).) "A defendant convicted of second degree murder must serve a sentence of 15 years to life, with a minimum term of 15 years before parole eligibility. (§§ 190, subd. (a), 3046, subd. (a)(2).)" (*Chiu, supra*, 59 Cal.4th at p. 163.)

After concluding *Favor* was not dispositive of the question before it, the Supreme Court engaged in a rigorous review of the "statutory and doctrinal bases of the natural and probable consequences doctrine." (*Chiu, supra*, 59 Cal.4th at p. 163.) The court observed that in the context of murder under the natural and probable consequences doctrine, cases have focused on the reasonable foreseeability of the actual resulting harm or the criminal act that caused that harm. (*Id.* at p. 164.) The court cited numerous cases addressing the issue of foreseeable consequences in relation to the natural and probable consequences doctrine. (*Id.* at pp. 164-165.) The court referred to legal authority holding the escalation of a confrontation to a deadly level was a foreseeable consequence of simple assault; a deadly shooting was a natural and probable consequence of aiding and abetting an assault with a deadly weapon; a fatal shooting was a natural and probable consequence of a gang fight; and the natural and probable consequence of any armed robbery is that someone may be shot. (*Id.* at p. 165, and cases cited therein.)

The *Chiu* court reiterated what was stated in *People v. Luparello* (1986) 187 Cal.App.3d 410, 439. "The natural and probable consequences doctrine is based on the principle that liability extends to reach 'the actual, rather than the planned or "intended" crime, committed on the *policy* [that] . . . aiders and abettors should be

7

responsible for the criminal *harms* they have naturally, probably, and foreseeably put in motion.'" (*Chiu, supra,* 59 Cal.4th at pp. 164-165.)

In the context of murder, the court held "the natural and probable consequences doctrine serves the legitimate public policy concern of deterring aiders and abettors from aiding or encouraging the commission of offenses that would naturally, probably, and foreseeably result in an unlawful killing." (*Chiu, supra*, 59 Cal.4th at p. 165.) The court reasoned, this "public policy concern loses its force in the context of a defendant's liability as an aider and abettor of a first degree premeditated murder." (*Id.* at p. 166.) It noted first degree murder is the unlawful killing of a human being with the additional elements of willfulness, premeditation, and deliberation and "[t]hat mental state is uniquely subjective and personal." (*Ibid.*) "It requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the acts that caused the death. [Citations.]" (*Ibid.*) That unique mental state distinguishes a first degree unlawful killing from a second degree murder, and triggers a heightened penalty. "Additionally, whether a direct perpetrator commits a nontarget offense of murder with or without premeditation and deliberation has no effect on the resultant harm. The victim has been killed regardless of the perpetrator's premeditative mental state." (*Ibid.*)

The Supreme Court reached the following conclusion: "Although we have stated that an aider and abettor's 'punishment need not be finely calibrated to the criminal's mens rea' [citation], the connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated to impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine, especially in light of the severe penalty involved and the above stated public policy concern of deterrence." (*Chiu, supra*, 59 Cal.4th at p. 166.)

The court held "that punishment for second degree murder is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally,

8

probably, and foreseeably result in a murder under the natural and probable consequences doctrine." (*Chiu, supra*, 59 Cal.4th at p. 166.) It added, "We further hold that where the direct perpetrator is guilty of first degree premeditated murder, the legitimate public policy considerations of deterrence and culpability would not be served by allowing a defendant to be convicted of that greater offense under the natural and probable consequences doctrine." (*Ibid.*)

The Attorney General argues *Chiu* was limited to first degree murder and *Favor* is controlling. While it is true the Supreme Court in *Chiu* declined to specifically overrule *Favor*, it is important to consider the question the court was addressing. The court was not reexamining *Favor* in a vacuum. In considering the case before it, the Supreme Court responded to the Attorney General's reliance on *Favor* and found it distinguishable. The critical holding in *Chiu* is that the perpetrator's mental state of premeditation and deliberation "is too attenuated to impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine." (*Chiu, supra*, 59 Cal.4th at p. 166.) It follows then that in the context of attempted murder, the perpetrator's mental state of premeditation and deliberation state is equally too attenuated to impose liability for premeditation and deliberation on an aider and abettor under the natural and probable consequences doctrine. The unique mental state of willfulness, premeditation, and deliberation is no less subjective and personal in the context of attempted murder than it is in the context of murder.

Penalty disparity and the public policy of deterrence were also important factors in the holding of the *Chiu* opinion. The court found significant that premeditation and deliberation was the distinction between first and second degree murder, and such a mental state triggers a heightened penalty. In the case of attempted murder, a finding of premeditation and deliberation likewise triggers a heightened penalty. Holding the aider and abettor liable for the perpetrator's mental state under the natural and probable consequences doctrine increases a maximum determinate sentence of nine years to a

9

possible life sentence of which the defendant must serve 16 years before parole consideration.  (§ 664, subd. (a).)  Such an increase in penalty cannot be viewed as de minimis or insufficient deterrence.

Lastly, the *Chiu* court noted the natural and probable consequences doctrine was intended to hold "'aiders and abettors . . . responsible for the criminal *harms* that they have naturally, probably, and foreseeably put in motion.'  [Citations.]"  (*Chiu, supra*, 59 Cal.4th at p. 164.)  Finding the mental state of the perpetrator does not increase the criminal harm, the court found a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine.  (*Id.* at p. 166.)  Similarly, just as the mental state of the perpetrator of a first degree murder does not increase the criminal harm done, neither does the mental state of the perpetrator of a deliberate and premeditated attempted murder increase the criminal harm.

Applying the legal analysis outlined in the *Chiu* opinion, we conclude the true finding of premeditated and deliberation as an aider and abettor cannot be based on the natural and probable consequence doctrine.[3]  Accordingly, we agree with Mejia's contention the jury was improperly instructed and the premeditation and deliberation special finding must be vacated.

On this record, it does not appear there is adequate evidence to support a finding of premeditation and deliberation without relying on a theory of vicarious liability.  Out of an abundance of caution, we remand the matter because although the premeditation and deliberation special finding cannot be supported by an aiding and abetting theory, we give the prosecution the opportunity to decide whether to retry Mejia on the special finding as a direct perpetrator.[4]

---

[3]  Mejia also contends the United States Supreme Court's holding in *Alleyne v. United States* (2013) 570 U.S. 99 (*Alleyne*), undermines the holding in *Favor*.  Finding *Chiu* dispositive, we need not address the applicability of *Alleyne*.

[4]  The prosecutor's comments in closing argument reflect the prosecution was proceeding on a natural and probable consequences theory in this trial.  Specifically, the

II. *Sentencing Error*

A. *Gun-Use Enhancement*

Mejia and the Attorney General agree the trial court erred in imposing the full 10-year sentence on count 7 for the gun-use enhancement (§ 12022.53, subds. (b), (d)(1)), and agrees the correct term is three years and four months pursuant to section 1170.1. Accordingly, we order the trial court to modify the sentence on count 7 to reflect the proper term of three years and four months for the enhancement.

B. *Sentence for First and Second Degree Attempted Robberies (Counts 3 & 7)*

The trial court imposed a term of eight months on count 7 (first degree attempted robbery). This part of the calculation was correct. The first degree robbery in this case was punishable by a term of three, four, or six years. (§ 213, subd. (a)(l)(B).) Those terms are halved under section 664 for an attempted first degree robbery, making the sentencing triad 18 months, two years, or three years. (§ 664, subd. (a).) Pursuant to section 1170.1, subdivision (a), the court imposed one-third the midterm (one third of two years is eight months).

The court imposed a three-year sentence on count 3 (an appropriate midterm for second degree robbery). (§ 213, subd. (a)(l)(A).) Accordingly, the court indicated the total term for counts 3 and 7 would be three years and eight months. This calculation was also correct.

However, later in the proceedings the court indicated the sentences on counts 3 and 7 would be doubled pursuant to the Three Strikes law. (§ 667, subd. (e).) It stated this would result in a sentence of seven years and six months on counts 3 and 7. This was incorrect.

Applying the Three Strikes law doubling provision, the three-year sentence on count 3 would be doubled to six years, and the consecutive sentence of eight months

prosecutor offered the following argument on the issue of premeditation and deliberation: "When I'm saying 'defendant' here, I am wrapping [Mejia] into Francisco Rodriguez."

11

on count 7 would be doubled to 16 months. The resulting total term on counts 3 and 7 would be seven years and four months, not seven years and six months. We recognize the court may have simply misspoken, but the matter must be remanded for resentencing on count 7 because the oral pronouncement was incorrect.

III. *Clerical Errors*

A. *Application of Section 654*

Mejia found a discrepancy between the court's oral pronouncement and its minutes/abstract of judgment. A trial court's oral pronouncement of judgment is the binding judgment, and appellate courts may order modification of clerical errors that fail to reflect that judgment properly. (*People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14.) The Attorney General agrees this court should correct the minutes and the abstract of judgment to reflect the proper judgment.

Here, the trial court stayed, pursuant to section 654, Mejia's sentences on counts 1, 2, 5, 8, and 10. The abstract of judgment/minutes indicate those terms are to be served concurrently. We order the trial court to correct the abstract of judgment and court minutes to reflect sentences on counts 1, 2, 5, 8, and 10, are imposed and stayed pursuant to section 654.

B. *Three Strikes Law*

On counts 3 and 7, the Attorney General noticed there was a discrepancy between the trial court's oral pronouncement of judgment and the minutes and abstract of judgment. The trial court stated it was doubling Mejia's sentences on counts 3 and 7 under the "Three Strikes" law. However, the abstract of judgment failed to account for the increased sentence. The Attorney General is correct in asserting the abstract of judgment did not reflect the court's intention to double the sentences on counts 3 and 7. But because the court's pronouncement of judgment was incorrect, we cannot simply order a correction of the minute order. The matter must be remanded for resentencing and a new abstract of judgment.

C. *Prior Serious Felony Conviction Enhancement*

The Attorney General correctly points out the section 667, subdivision (a)(l), enhancement should not appear twice in the abstract of judgment. The trial court imposed the enhancement only once, and it was properly indicated in the abstract of judgment of the determinate sentence. We order the trial court to delete this enhancement from the abstract of judgment on the indeterminate sentence.

D. *Section 669*

The court's minutes indicate Mejia must serve his determinate sentence "consecutively to the defendant's indeterminate sentence." As correctly noted by the Attorney General, when a defendant is sentenced to both a determinate and an indeterminate sentence, the determinate sentence is served first. (§ 669.) We order the court to modify the court minutes to indicate Mejia must serve his determinate sentence first, followed by his indeterminate sentence.

E. *Total Determinate Term*

As noticed by the Attorney General, due to the above modifications, the abstract of judgment will no longer have an accurate total time. Because the matter is being remanded for resentencing, we are confident the court's new abstract of judgment will reflect a new total determinate term after taking into account the orders and disposition of this opinion.

IV. *New Sentencing Legislation*

After briefing was completed, Mejia requested permission to file a supplemental brief on Senate Bill No. 1393, signed by the governor on September 30, 2018. The new law gives trial courts the discretion to strike the punishment for serious felony convictions as defined in section 667, subdivision (a)(1). We permitted Mejia and the Attorney General to file supplemental briefs. Mejia also requested we take judicial notice of the Supreme Court's dockets in two cases. (*People v. Gibson,* Case no.

13

S250914 and *People v. Johnson*, Case no. S250283). We deny this request because this information was unnecessary for us to resolve this issue.

The Attorney General concedes that if Senate Bill No. 1393 took effect before Mejia's judgment became final, the new law would apply to him retroactively. The law became effective January 1, 2019. Accordingly, we accept the Attorney General's concession. We reverse the trial court's imposition of the five-year enhancement and remand this issue for resentencing so the trial court may consider whether to exercise its recently conferred discretion to strike the five-year prior conviction enhancement imposed pursuant to section 667, subdivision (a)(1).

## DISPOSITION

We conclude the true finding of premeditated and deliberation as an aider and abettor cannot be based on the natural and probable consequence doctrine. Therefore, the premeditation and deliberation special finding must be vacated and the matter remanded to give the prosecution the opportunity to decide whether to retry Mejia on the special finding as a direct perpetrator.

The case is also remanded so the trial court may consider whether to exercise its recently conferred discretion to strike the five-year prior conviction enhancement pursuant to section 667, subdivision (a)(1).

During resentencing, we direct the trial court to correct several errors and resentence Mejia as follows: (1) modify the sentence on count 7 for the gun-use enhancement (§ 12022.53, subds. (b), (d)(1)), to three years four months; and (2) in applying the Three Strikes law to the underlying sentences on counts 3 and 7, modify the final calculated sentence to be a total of seven years and four months (not seven years and six months as previously declared on the record).

The trial court is further directed to correct the abstract of judgment and minute order to correct the following clerical errors:

14

(1) The sentences on counts 1, 2, 5, 8, and 10, are imposed and stayed pursuant to section 654;

(2) The court's intention to double the sentences on counts 3 and 7;

(3) Deletion of the section 667, subdivision (a)(l), enhancement from the indeterminate abstract of judgment;

(4) The minute order should reflect the determinate sentence shall be served first followed by the indeterminate sentence; and

(5) The minute order and abstract of judgment should indicate the newly recalculated total time imposed for the determinate term.

The trial court shall forward the new abstract of judgment reflecting the above modifications and corrections to the Department of Corrections and Rehabilitation.

Finally, we deny the request for judicial notice. In all other respects, the judgment is affirmed.


O'LEARY, P. J.

I CONCUR:


IKOLA, J.


15

BEDSWORTH, J., Dissenting:


I respectfully dissent. The primary issue in this case is whether the natural and probable consequences theory of aiding and abetting can be used to support a conviction for attempted premeditated murder. In *People v. Favor* (2012) 54 Cal.4th 868 (*Favor*), our Supreme Court answered that question in the affirmative. Two years later, in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), the court held the natural and probable consequences doctrine *cannot* be used to support a conviction for premeditated murder. In so holding, *Chiu* did not overrule *Favor*; it simply determined there were sufficient distinctions between the crimes of attempted premeditated murder and premeditated murder to justify different results in those two cases. Thus it seems to be *Favor* remains good law and controls the outcome in this case. (See *People v. Gallardo* (2017) 18 Cal.App.5th 51, 82-85.)

My colleagues have concluded there is "no principled distinction" between *Favor* and *Chiu*, and they may be right. But my understanding of stare decisis is that the Supreme Court tell *us* whether that is the case. Until they do, I feel *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, requires us to follow *Favor*.



BEDSWORTH, J.