Filed 7/17/25  P. v. Avila CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063675 |
| v. | (Super. Ct. No. 12NF3910) |
| PEDRO AVILA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment of the Superior Court of Orange County, Steven D. Bromberg, Judge. Reversed and remanded.

Avatar Legal, and Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin

Urbanski, Seth M. Friedman and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

*   *   *

In 2014, Pedro Avila pled guilty to various crimes, including attempted murder. In 2023, he filed a petition for resentencing of his attempted murder conviction, which the trial court denied at the prima facie stage of review. The trial court concluded the record of conviction, including the preliminary hearing transcript, established Avila was the sole perpetrator as a matter of law. Avila appealed, arguing the record of conviction did not conclusively establish he was statutorily ineligible for resentencing relief. The Attorney General agrees with Avila. Following a de novo review of the record of conviction, we conclude Avila has made a prima facie case for resentencing relief under Penal Code section 1172.6.[1] Accordingly, we reverse and remand for further proceedings.

STATEMENT OF THE CASE

I.

UNDERLYING CASE

On December 14, 2012, the Orange County District Attorney filed a felony complaint against Avila, charging him with premeditated attempted murder (count 1), shooting at an inhabited dwelling (count 2), assault with a firearm (count 3), hit and run resulting in injury (count 4), unlawfully carrying a loaded firearm in pubic as an active participant in a criminal street gang (count 5), possession of a firearm by a felon (count 6), and gang-related resisting officer (count 7).

---

[1] All further statutory references are to the Penal Code, unless stated otherwise.

2

As to counts 1 and 2, it was further alleged that Avila intentionally and personally discharged a firearm during the commission and attempted commission of the offenses. As to counts 1, 2, and 3, it was alleged that he personally used a firearm in the commission and attempted commission of the offenses. As to counts 1, 2, 3, 5, and 6, it was alleged that the offenses were committed for the benefit of a criminal street gang. It was also alleged that Avila had a prior serious felony conviction and a prior strike conviction.

On October 8, 2014, Avila pled guilty to the three counts in the felony complaint, including the attempted murder count, and the gang enhancement. As the factual basis for his guilty plea to attempted murder, he admitted that on December 11, 2012, "I attempted to murder John Doe for the benefit of Citron Street, a criminal street gang, with the specific intent to assist the criminal conduct of Citron Street."

The trial court sentenced Avila to an aggregate term of 17 years in state prison.

## II.

### RESENTENCING PETITION

A. *Petition*

On September 5, 2023, Avila filed a form petition for resentencing of his attempted murder conviction. In his petition, he stated that (1) he was charged with attempted murder under the natural and probable consequences doctrine; (2) he accepted a plea offer in lieu of trial at which he could have been convicted of attempted murder; and (3) he could not presently be convicted of attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

3

B. *Opposition*

In response, the district attorney requested the trial court deny the petition at a prima facie hearing. The district attorney argued Avila was guilty of attempted murder under current law because: (1) he admitted to being the actual perpetrator in his plea form; (2) "no one else [was] charged with this attempted murder"; and (3) "the evidence presented during the preliminary hearing indisputably shows that [Avila] was the actual perpetrator of the attempted murder[.]"

A copy of the preliminary hearing transcript was attached. At the preliminary hearing, three police officers testified. Shortly after the shooting, Officer Christy interviewed Witness M, who stated he saw a Hispanic male running away from a gray car being driven by another Hispanic male. Witness M saw the driver shoot at the victim multiple times before driving away. The officer also interviewed Witness A about 45 minutes after the shooting. Witness A told the officer she saw a man in a gray or silver car fire three or four shots at the victim before driving away. As the shooter drove away, he hit a small child.

Officer Browne interviewed Witness A eight days later. She told him she did not see the shooting, but heard about it from her cousin. Immediately after her cousin informed her about the shooting, Witness A saw a gray vehicle pass by. Witness A and her father followed the vehicle, and saw it hit a little girl before continuing and ultimately parking in a driveway. Witness A testified the sole occupant of the vehicle was a light skinned Hispanic male. Witness A identified the victim's photo when shown a photographic sixpack containing his picture. She initially could not identify the driver from another sixpack, but eventually selected Avila's photo as resembling the suspect due to his skin tone.

4

Officer Phillips testified that on the day of the shooting, he learned about the shooting, including that witnesses had said a silver car was involved and it was related to the Citron street gang. From his prior contacts with Avila, a Citron gang member, the officer recalled Avila drove a silver car. Officer Phillips contacted Avila's probation officer, and about two hours later, he was able to detain Avila, who was driving his car. Two other male Hispanics were in the vehicle, one in the front passenger seat. Officers recovered a loaded handgun from the car's center vehicle.

Officer Phillips interviewed Avila the next afternoon at the police station. Avila stated he could not recall what happened during the time of the shooting because he had blacked out after drinking. After the officer informed Avila that a little girl had been run over and was not in good condition, Avila got upset and said he wanted to write an apology letter to the little girl. When the officer provided a pen and paper, Avila wrote an apology letter. In the officer's presence, he also called his girlfriend and informed her that he "had [run] over a little girl."

C. *Reply*

In reply to the district attorney's opposition, Avila argued the trial court could not consider the facts elicited at the preliminary hearing because he did not stipulate to the transcript as a factual basis for his plea. He further argued his guilty plea did not preclude resentencing relief because he merely admitted liability to attempted murder in generic language.

D. *Order Denying Resentencing Petition*

Following the prima facie hearing, the trial court denied the resentencing petition without an order to show cause. It concluded Avila was ineligible for resentencing relief because "[t]he record of conviction refutes the possibility that [Avila] was convicted under a natural and probable

5

consequences doctrine." The court explained: "[Avila] was charged alone. He admitted to personally attempting to murder John Doe in his [plea] form. [Avila] did not reference any other co-participant in the [plea] form such that malice could have been imputed to [Avila] based on his participation in another offense. Consideration of the preliminary hearing transcript supports this finding and does not necessitate judicial fact-finding. There is no allegation or evidence of an accomplice in [Avila]'s case, nor does [Avila] articulate a scenario under which he could have been prosecuted under a natural and probable consequences theory. The uncontradicted evidence introduced at the preliminary hearing shows that [Avila] acted alone by shooting at the victim from his car. Nobody else was present in [his] car at the time of the shooting and witnesses identified petitioner as the shooter. When law enforcement ultimately apprehended [Avila], he was driving a car matching the shooter's description and had a loaded handgun in the center console. Based on this uncontradicted evidence, [Avila] could not have been prosecuted under a natural and probable consequences theory and thus he fails to establish a prima facie case for relief."

On January 30, 2024, Avila timely noticed an appeal from the order denying his resentencing petition.

DISCUSSION

I.

APPLICABLE LAW

Section 1172.6, subdivision (a) provides in relevant parts that a "person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when all of the

6

following conditions apply: [¶] (1) A complaint . . . was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner . . . accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of . . . attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."

The petitioner has the burden of making a prima facie case for resentencing relief. The prima facie stage bar is "'very low.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

The court may deny the petition at the prima facie stage if the record of conviction discloses that the petitioner is ineligible for relief as a matter of law. (*Lewis, supra,* 11 Cal.5th at pp. 970-971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 972.) "When the petitioner's conviction resulted from a guilty plea rather than a trial, the record of conviction includes the facts 'the defendant admitted as the factual basis for a guilty plea.'" (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211-1212, quoting *People v. Gallardo* (2017) 4 Cal.5th 120, 136.) The record of conviction also includes the preliminary hearing transcript. (See *People v. Patton* (2025) 17 Cal.5th 549, 568 (*Patton*) ["[T]here is no dispute that the record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea"].) This is the case even if the defendant did not stipulate to the transcript or its contents. (*Id.* at p. 569

["The absence of such a stipulation during an earlier plea colloquy does not eliminate th[e] role" "a transcript can play at the prima facie stage of the resentencing process"].) We review de novo the trial court's determination that the petitioner failed to make a prima facie showing for relief. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Eynon* (2021) 68 Cal.App.5th 967, 975 (*Eynon*).)

## II.

### ANALYSIS

As noted above, the Attorney General concedes Avila has stated a prima facie case, and the record of conviction does not conclusively establish he is ineligible for resentencing relief. We accept the concession.

Avila satisfied the first prong of the prima facie case because the felony complaint generically charged him with premeditated attempted murder. At the time Avila was charged, under the natural and probable consequences doctrine, an aider and abettor could be found guilty of premeditated attempted murder, even if the aider and abettor did not personally act with premeditation and deliberation, as long as the direct perpetrator acted with premeditation and deliberation. (See *People v. Favor* (2012) 54 Cal.4th 868, 880, superseded by statute on other grounds as stated in *People v. Hin* (2025) 17 Cal.5th 401, 442.) Thus, "the generic [attempted] murder charge allowed the prosecution to proceed on any theory of liability, including natural and probable consequences . . . ." (*Eynon, supra,* 68 Cal.App.5th at p. 977.)

The fact that Avila was the only person charged with the attempted murder only suggests he was the sole perpetrator. It does not conclusively establish that fact. "[W]e are aware of no authority requiring prosecutors to try all codefendants together, so this single charging document

8

does not foreclose the possibility of other people having been charged for related crimes." (*People v. Estrada* (2024) 101 Cal.App.5th 328, 339 (*Estrada*).)

As to the second prong, Avila accepted a plea in lieu of going to trial at which he could have been convicted of attempted murder under the natural and probable consequences doctrine. Thus, he satisfied this element of the prima facie case.

Additionally, Avila's plea to the attempted murder charge did not foreclose resentencing relief. He admitted that he "attempted to murder John Doe for the benefit of Citron Street, a criminal street gang, with the specific intent to assist the criminal conduct of Citron Street." However, Avila "did not plead to any particular type of malice when pleading to attempted murder. Further, he did not admit to any specific theory of attempted murder. Instead, the record shows that he pleaded to the generic charge of attempted murder without the 'willful, deliberate, and premeditated' allegation. He did not admit he harbored an intent to kill." (*Estrada*, 101 Cal.App.5th at p. 338.) In sum, Avila's admissions in his plea did not foreclose the possibility that malice was imputed to him under the natural and probable consequences doctrine.

The third and final prong of the prima facie case requires that Avila "could not presently be convicted of . . . attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6 (a)(3).) Avila satisfies this element because attempted murder under the natural and probable consequences doctrine no longer exists due to the changes to sections 188 and 189. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) The preliminary hearing transcript did not disqualify Avila because it did not conclusively establish that "he was the sole and direct perpetrator of

9

the shooting such that his conviction was not based on the natural and probable consequences theory." (*Patton*, *supra*, 17 Cal.5th at p. 563.) Avila admitted to the hit and run, but he never admitted to the shooting. When he was apprehended two hours after the shooting, he was accompanied by two other males, who could have been the shooter. Although Witness A told Officer Christy that Avila was the lone shooter, she later told Officer Browne she did not witness the shooting. Witness M, who witnessed the shooting, never identified Avila as the shooter. In short, the trial court could not have relied on the facts in the preliminary hearing transcript to find that Avila was the sole shooter as a matter of law. Accordingly, the trial court erred in denying the resentencing petition at the prima facie stage.

## DISPOSITION

The order denying Avila's resentencing petition is reversed. On remand, the trial court is directed to issue an order to show cause and to conduct further proceedings as required under section 1172.6.

DELANEY, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

SCOTT, J.

10