Filed 3/24/21  P. v. Hamilton CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICKY HAMILTON et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B256760<br>(Super. Ct. No. BA381749-01, -03)<br>(Los Angeles County)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 24, 2021, be modified as follows:

1.  On page 2, the third full paragraph beginning "We reissue" is deleted, and the following paragraph is inserted in its place:

> "We reissue our opinion filed April 27, 2016, and omit all discussion of and reference to Johnson's contentions on appeal.  No changes are made as to Hamilton, with the exception of the following discussion and amendment to the disposition. Because Hamilton has an arguable claim that, with

the reissuance of this opinion, he is entitled to the benefit of Penal Code [FN 1] section 12022.53, subdivision (h), we change the disposition of his appeal to remand to the trial court for the limited purpose of allowing that court to decide whether to exercise its sentencing discretion under section 12022.53, subdivision (h), as amended by Senate Bill No. 620.  (Stats. 2017, ch. 682, § 2.)  Hamilton's judgment of conviction is affirmed in all other respects."

2.  On page 3, first line, "Pen. Code" is deleted so that the statutes within the parenthetical now begin:  "(§§ 664, 187, subd. (a)…)."  Footnote 1 at the end of the parenthetical clause is moved to page 2, as noted above, using the same language:  "All further statutory references are to the Penal Code unless otherwise stated."

3.  On page 11, the text under the heading "DISPOSITION" is deleted.  The following paragraph is inserted in its place:

"We vacate Ricky Hamilton's sentence and remand the matter for the limited purpose of allowing the trial court to decide whether to exercise its sentencing discretion under section 12022.53, subdivision (h), as amended by Senate Bill No. 620. Hamilton's judgment of conviction is affirmed in all other respects.  We dismiss the appeal as moot as to appellant Rondalyn Johnson."

2

This modification changes the judgment. Appellant Ricky Hamilton's petition for rehearing is denied.

_____
GILBERT, P. J.          YEGAN, J.          PERREN J.

3

Filed 2/24/21 P. v. Hamilton CA2/6 (unmodified opinion)
Opinion following rehearing
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICKY HAMILTON et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B256760<br>(Super. Ct. No. BA381749-01, -03)<br>(Los Angeles County)<br><br>OPINION FOLLOWING<br>REHEARING |

On April 27, 2016, this court issued an opinion affirming the judgments of conviction of appellants Ricky Hamilton and Rondalyn Johnson. On August 10, 2016, the California Supreme Court granted Johnson's petition for review and denied Hamilton's petition for review. (*People v. Hamilton et al.,* No. S234559.) On April 10, 2019, the California Supreme Court transferred this matter to our court with directions to vacate our decision (filed April 27, 2016) and to "reconsider the cause in light of Senate Bill No. 1437 (Stats. 2018, ch. 1015)." On August 21, 2019, we issued a second opinion reaching the same result as our

original opinion.  Then, on September 19, 2019, we granted appellant Rondalyn S. Johnson's petition for rehearing.

While this appeal was under submission, on October 30, 2019, in a habeas matter filed by Johnson, the California Supreme Court issued an order for the Department of Corrections and Rehabilitation to show cause before the Los Angeles County Superior Court whether Johnson was entitled to a juvenile fitness hearing under Welfare and Institutions Code section 707, subdivision (a), based on new documentation that Johnson was a minor at the time she committed the underlying offenses.  (*In re Johnson*, No. S253372.)  On December 24, 2019, this court vacated submission of Johnson's appeal pending the superior court's resolution of her request for a juvenile fitness hearing.

Thereafter, the Los Angeles County Superior Court transferred Johnson's case to juvenile court and adjudicated her as a juvenile for the offenses at issue in this appeal.  On January 8, 2021, in Los Angeles County Superior Court Case No. YJ40698, Johnson admitted to one count of attempted murder and one count of burglary.  She was declared a ward of the court under Welfare and Institutions Code section 602, and she was ordered home on probation for six months.  Johnson and the People agree that Johnson's admissions to the allegations in the juvenile court petition make this appeal moot.  Accordingly, we dismiss Johnson's appeal as moot.

We reissue our opinion filed April 27, 2016, without any changes as to Hamilton, and omit all discussion of and reference to Johnson's contentions on appeal.

Ricky Hamilton appeals judgment after conviction by jury of first degree willful, deliberate, and premeditated attempted murder of Wassan Flores; first degree burglary; and home

2

invasion robbery.  (Pen. Code, §§ 664, 187, subd. (a), 189, 459, 211.)[1]  The jury found true allegations that Hamilton committed each offense for the benefit of a street gang.  (§ 186.22, subd. (b)(1)(C).)  The jury also found true allegations that Hamilton, in the commission of the attempted murder and the robbery, used and discharged a handgun causing great bodily injury. (§§ 12022.53, subds. (b), (c) & (d).)  The trial court sentenced Hamilton to 40 years to life in prison.  We affirm.

BACKGROUND

The Black P Stones gang is a "Bloods" gang.  The Rollin 30's gang (also known as the Harlem 30's) is a "Crips" gang.  The gangs are rivals.

Hamilton is a member of the Black P Stones gang.  Flores (the victim) is an associate of the Rollin 30's.  In 2011, Hamilton was dating Johnson.  Flores was a friend of Johnson.

Flores lived in an apartment in Black P Stones gang territory with his mother and sister.  In February 2011, Hamilton and another man came to the apartment door, and Hamilton asked Flores if he was "from Harlem."  When a security guard appeared, Hamilton and the other man left.  Flores felt disrespected.

A couple of days later, Flores saw Hamilton on the street and challenged him to a fight.  Hamilton ran away.  Flores relayed this information to Johnson.

One night about two weeks later, Johnson and Flores spent the evening together at Flores's apartment.  Flores's mother was at work and his sister was asleep.  Johnson unlocked the sliding door when Flores was not looking.

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

3

When Johnson left, Hamilton and two masked men entered through the sliding door. Hamilton had a handgun. Flores saw his face and identified him at trial.

The men kicked and beat Flores. Flores curled up in a fetal position. Hamilton hit Flores in the head with the gun, fracturing his skull. Flores ran toward his bedroom. Hamilton fired five shots at him, hitting Flores's hip. Hamilton took Flores's laptop and cellphone.

Johnson's text messages from that night showed that she helped plan the robbery with Hamilton's friend, Darrin Collins. (Collins was tried separately.) The messages include this exchange: Johnson: "Hold on he barely drinkin im finna make him chugg sum shyt. [I]ma text u when to come." Collins: "20 past we bout2 kum up nk there." Johnson: "No wait mah niggah I don't wanna be here. . . . Do yall got some shyt to put over yall face n shyt?" Collins: "Iz da back open." Johnson: "Yeah it iz . . . . Im text u soon as I walk out da gate."

Afterward, Johnson tried to convince Flores that Hamilton was not involved. In a pretext telephone call arranged by the police, Flores called Johnson to talk about the attack. Johnson told Flores, "[I]t couldn't have been [Hamilton]"; "[Hamilton] doesn't even have a gun"; and "some other guys came over . . . they took [Hamilton's] little brother's gun." The jury heard a recording of the call. The trial court instructed them to consider it only against Johnson and not to consider the truth of the matters asserted.

Johnson's counsel conceded that Johnson planned the burglary, but argued Johnson was not responsible for the shooting because she could not foresee it. Hamilton's counsel

4

argued that Hamilton was not involved in the burglary or the shooting and that Flores was a jealous and unreliable witness.

A Los Angeles police officer testified as an expert about the Rollin 30's gang. He testified that Flores was affiliated with the gang. Another officer testified about the Black P Stones gang. He testified Hamilton was a member. In response to a hypothetical question, the officer opined that a shooting in the circumstances of this case would be for the benefit of the Black P Stones gang, committed to restore respect to the gang after a member ran away from a fight. He said that the primary activities of the Black P Stones gang include attempted murders, murders, and home invasion robberies. He testified that a Black P Stones member was convicted of murder in 2008 and that two other members were convicted of attempted murder in 2011.

## DISCUSSION

*Instructions - Assault with a Firearm as Lesser Included Offense to Attempted Murder*

The trial court did not have a sua sponte duty to instruct on assault with a firearm as a lesser included offense of attempted murder although the accusatory pleading alleged firearm enhancements. "[E]nhancements may not be considered as part of an accusatory pleading for purposes of identifying lesser included offenses." (*People v. Sloan* (2007) 42 Cal.4th 110, 114 [applying multiple conviction rule], citing *People v. Wolcott* (1983) 34 Cal.3d 92, 96, 100-101 [no sua sponte duty to instruct on assault with a deadly weapon as a lesser included offense of robbery, notwithstanding firearm use enhancement].)

A trial court has a sua sponte duty to instruct on all necessarily included offenses supported by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149.) A lesser offense is

5

included in a greater offense if either the statutory elements of the greater offense or the facts actually alleged in the accusatory pleading include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. (*People v. Smith* (2013) 57 Cal.4th 232, 244.)

Assault with a firearm is not a lesser included offense of attempted murder. (*People v. Parks* (2004) 118 Cal.App.4th 1, 6.) And assault with a firearm does not become a lesser included offense of attempted murder when the accusatory pleading includes firearm allegations. (*People v. Wolcott*, *supra*, 34 Cal.3d 92, 96, 100; *People v. Alarcon* (2012) 210 Cal.App.4th 432, 436-439 [assault with a firearm not a lesser offense of attempted murder with firearm enhancement]; *People v. Bragg* (2008) 161 Cal.App.4th 1385, 1398 [same].)

*Apprendi v. New Jersey* (2000) 530 U.S. 466 and its progeny do not undermine *Wolcott*'s holding. *Apprendi* established that an enhancement allegation is the functional equivalent of a greater crime for purposes that do not encompass the accusatory pleading test. (*People v. Alarcon*, *supra*, 210 Cal.App.4th 432, 437.) *Apprendi* does not require us to "treat penalty allegations as if they were actual elements of offenses for all purposes under state law." (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 137 [enhancements should not be considered in defining necessarily included offenses for double jeopardy protection, *Apprendi* notwithstanding]; *People v. Izaguirre* (2007) 42 Cal.4th 126, 128 [enhancement allegations may not be considered in defining necessarily included offenses for the multiple conviction rule, *Apprendi* notwithstanding]; *People v. Sloan*, *supra*, 42 Cal.4th 110, 122-123 [same].)

6

*Sufficient Evidence of Intent and Premeditation*

Sufficient evidence supports the jury's finding that Hamilton intentionally attempted to kill Flores and acted willfully, with premeditation and deliberation.

Hamilton was prepared for violence when he entered Flores's apartment armed with a handgun. He demonstrated his intent to kill when he fired five shots at Flores, " ' "in a manner that could have inflicted a mortal wound had the bullet been on target." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 741 [firing at close range can demonstrate intent to kill].) There was strong evidence of motive and planning. (*People v. Perez* (1992) 2 Cal.4th 1117, 1125 [evidence of planning, motive, and method can support a finding of premeditation and deliberation].) One month before Hamilton shot Flores, he confronted him about his association with a rival gang. Hamilton embarrassed himself when he ran away from Flores's subsequent challenge to fight. A rational jury could conclude that Hamilton was motivated to kill Flores in order to restore respect for himself and his gang. Johnson's text messages and her unlocking the sliding glass door for Hamilton's group to enter the apartment demonstrate planning.

Hamilton argues that if he intended to kill Flores, he would have executed Flores immediately, instead of beating him first and waiting until Flores ran toward his room to shoot him. The jury rejected this theory of the evidence, and substantial evidence supports its decision. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [we review the record in the light most favorable to the judgment]; *People v. Kraft* (2000) 23 Cal.4th 978, 1053 [we presume in support of the judgment the existence of every fact the jury might reasonably deduce from the evidence].)

7

*Gang Expert Testimony on Ultimate Fact*

The trial court did not abuse its discretion when it allowed the gang expert to testify that a member of the Black P Stones gang would, hypothetically, "shoot to kill" in the circumstances of this case.

Expert opinion on a specific defendant's state of mind is not admissible where it would invade the province of the jury. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 647, 658, as limited by *People v. Vang* (2011) 52 Cal.4th 1038, 1047-1048.) The trial court so instructed the jury early in the testimony of the Black P Stones gang expert. The court told the jury, "The witness is not allowed to testify about what any actual person may have thought or intended. He can simply give an opinion based on the hypothetical." The court explained, "It is up to you to decide whether the facts have been proved or whether the basis for the opinion has any validity."

When the expert came close to overstepping this boundary, the trial court struck the testimony and admonished him. The expert said, in response to a hypothetical, "[Y]ou have the . . . victim[] get up and try to attempt to run . . . . [Y]ou have the . . . Black P Stones member[] taking it to a whole other level, not only attempting to shoot or injure but, in my opinion, shoot to kill." When defense counsel objected, the trial court struck the phrase, "shoot to kill," and admonished the expert, "Please don't opine on what anybody had intended or thought."

Later, the expert testified, "When you shoot an individual, . . . you're going to actually elevate your status in a matter of seconds . . . . [I]f you are willing to take someone else's life or shoot at someone . . . not to injure them, you're going to shoot at them to take their life, that's going to elevate the status." This

was not an opinion on Hamilton's state of mind. It was an explanation that a gang member's status is quickly elevated if they shoot to kill, based on a hypothetical. Whether Hamilton shot to kill was a question left for the jury to decide. An expert may be questioned through the use of hypothetical questions regarding hypothetical persons. (*People v. Vang*, *supra*, 52 Cal.4th 1038, 1047.) The trial court properly overruled defense counsel's objection to the testimony.

*Prosecutorial Misconduct*

The trial court did not abuse its discretion when it denied Hamilton's motion for mistrial based on prosecutorial misconduct. (*People v. Alvarez* (1996) 14 Cal.4th 155, 213 [review for abuse of discretion].) Hamilton contends the prosecutor argued facts outside the record when she said Johnson "knows [Hamilton] has access to the guns" and when she suggested Hamilton received a "Crip Killer" tattoo after he shot Flores. The prosecutor's argument was fairly based on the evidence, did not render the trial fundamentally unfair, and did not involve deceptive or reprehensible methods of persuasion. (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

To prove Johnson's state of mind, the prosecutor referred to the pretextual telephone call in which Johnson said, "[I]t couldn't have been [Hamilton]"; "[Hamilton] doesn't even have a gun"; and "some other guys came over . . . . [T]hey took [Hamilton's] little brother's gun." The prosecutor argued, "[W]hat else does Miss Johnson know? You know, based on her conversation with Wassan Flores, where she's trying to convince him, 'Oh, those guns Ricky has, he doesn't have them anymore.' In terms of what she knows, she knows he has access to the guns." The argument was consistent with the trial court's instruction that the jury

9

should only consider the telephone call against Johnson and could not consider any statement by Johnson against Hamilton. When Hamilton's counsel objected to the argument, the trial court reminded the jury, "You heard the evidence, it's up to you to decide what's in the evidence." There was no misconduct.

The prosecutor did not commit misconduct when she suggested that Hamilton received a "Crip Killer" tattoo after he shot Flores. Field identification cards for Hamilton's multiple contacts with law enforcement before the shooting did not note a "C.K." tattoo, and the gang expert saw none in 2008. At trial, Hamilton had a "C.K." tattoo on his calves. The expert testified that "C.K." means "Crip Killer." The jury could fairly infer that Hamilton received the tattoo after he shot Flores, an associate of a Crips gang. The prosecutor argued, "[I]f this is just about jealousy and has nothing to do with Ricky Hamilton's affiliation with the Black P Stones and with the fact that he thought [Flores] was affiliated with the Crips, then why is it that Ricky Hamilton happens to get a tattoo that says . . . C.K.?" and "Why does he have a tattoo that says 'Crip Killer,' that wasn't there any of the other times that he was stopped and had contact with any of the officers that you heard about in 2008?" The argument was supported by the evidence.

*Conflict of Interest*

After the verdict and before sentencing, Hamilton's counsel moved to withdraw based on a conflict of interest. After an in camera hearing, the trial court granted the motion. Hamilton asks us to independently review the sealed transcript to determine if the conflict existed during trial. (Cal. Rules of Court, rule 8.45(c)(1)(D), (c)(2).) We have reviewed the transcript and are satisfied that the conflict arose after trial.

10

## DISPOSITION

We affirm the judgment as to appellant Ricky Hamilton. We dismiss the appeal as moot as to appellant Rondalyn Johnson.

NOT TO BE PUBLISHED.


                                        GILBERT, P. J.

We concur:



        YEGAN, J.



        PERREN, J.

11

Anne H. Egerton, Judge

Superior Court County of Los Angeles

_____

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant Ricky Hamilton.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant Rondalyn S. Johnson.

Xavier Becerra, Kamala D. Harris, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell, William H. Shin, Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.