Filed 1/14/25  P. v. Ramirez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
| --- | --- |
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083226 |
| v. | (Super.Ct.No. RIF099598) |
| RALPH SANCHEZ RAMIREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Gary Polk, Judge.

Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Seth M. Friedman, Robin

Urbanski, Minh U. Le, and Juliet W. Park, Deputy Attorneys General, for Plaintiff and

Respondent.

Ralph Sanchez Ramirez appeals an order summarily denying his petition under Penal Code[1] section 1172.6, which sought resentencing on his 2004 conviction on two counts of attempted first degree murder.  His jury was not instructed on the natural and probable consequences doctrine, but he argues he nevertheless could have been convicted under that doctrine, making him eligible for resentencing, because of ambiguities in another instruction and the prosecution's closing argument.  We affirm.

FACTS

On October 1, 2001, Ramirez participated with three other men in a gang-related shooting targeting a group gathered in front of a house in Riverside.[2]  Two people were the intended victims, but six others were in the front yard and two more were inside the house.  Ramirez was not one of the two shooters.

In 2004, a jury found Ramirez guilty on two counts of attempted murder (§§ 664, 187, subd. (a)), one count of shooting at an inhabited dwelling (§ 246), and one count of assault with a firearm (§ 245, subd. (a)(2)), and found Ramirez was a principal and another principal personally discharged a firearm (§ 12022.53, subds. (c), (d), and (e)(1))

---

[1]  Undesignated statutory citations are to the Penal Code.   Section 1172.6 was numbered as section 1170.95 at the time Ramirez filed his motion.

[2]  In this paragraph, we describe facts from our previous appellate opinion (*People v. Olivarez* (May 2, 2006, E036435) [nonpub. opn.]) only to provide context for our analysis of whether the jury instructions and trial transcript foreclose the existence of a prima facie case.  (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988 [courts may not consider factual summary in appellate opinion to determine eligibility at prima facie stage]; cf. § 1172.6, subd. (d)(3) [facts set forth in appellate opinions may not be considered during the evidentiary hearing occurring after a prima facie case has been found].)

as well as that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)). His sentence, after modifications this court ordered on direct appeal, is 30 years to life. (*People v. Olivarez, supra*, E036435.)

In February 2022, Ramirez petitioned for resentencing. The trial court issued an order to show cause. The parties then engaged in several rounds of briefing and motion practice.

In November 2023, the trial court issued a tentative ruling vacating the order to show cause and denying Ramirez's petition on the ground he had not made a prima facie showing for relief. In January 2024, after more briefing and a hearing, the trial court issued a written order in accord with its tentative, vacating the order to show cause and summarily denying Ramirez's petition.

## DISCUSSION

Ramirez asks that we reverse the trial court's summary denial of his petition and remand the matter for an evidentiary hearing. His jury was not instructed on the natural and probable consequences doctrine. Nevertheless, he argues, the record shows his jury could have convicted him under that doctrine because of ambiguities in the "kill zone" jury instruction and the prosecution's closing argument. We are not persuaded.

Effective January 1, 2019, Senate Bill No. 1437 (Senate Bill 1437) (Stats. 2018, ch. 1015) amended California's murder statutes to curtail the use of two theories of vicarious liability for murder. These theories are grounded in situations where the defendant intended to commit some crime other than murder, yet a death resulted. The

3

theories are known as felony murder and the natural and probable consequences doctrine. Senate Bill 1437 also created a statutory procedure for convicted defendants to benefit from these changes to the law. This procedure allows eligible defendants to have convictions based on an abrogated theory of vicarious liability vacated and be resentenced for other crimes charged or for the intended crime. (§ 1172.6, subds. (a), (d).)

Effective January 1, 2022, Senate Bill No. 775 (Senate Bill 775) (Stats. 2021, ch. 551) expanded Senate Bill 1437's petition process to include individuals convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) Under the natural and probable consequences doctrine, "a defendant who aids and abets a confederate in committing a crime (the target offense) is liable for other crimes committed by the confederate if those further [nontarget] crimes were natural and probable consequences of the target offense." (*People v. Eynon* (2021) 68 Cal.App.5th 967, 973 (*Eynon*); accord *People v. Smith* (2014) 60 Cal.4th 603, 611 (*Smith*).) The aider and abettor's liability under the doctrine for any nontarget offense is vicarious, meaning that "'the nontarget offense is unintended [by the aider and abettor], [so] the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.'" (See *People v. Chiu* (2014) 59 Cal.4th 155, 164, superseded by statute on other grounds as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103.)

"We review de novo an order denying a section 1172.6 petition at the prima facie review stage." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170; see *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 930.) We may affirm if the trial court's order is correct on any legal theory, regardless of the court's reasoning in reaching its decision. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145 ["On appeal we consider the correctness of the trial court's ruling *itself*, not the correctness of the trial court's *reasons* for reaching its decision"].)

Before Senate Bill 1437, including at the time of Ramirez's trial, a defendant could be convicted of attempted murder if the jury found he aided and abetted a target offense for which attempted murder was a natural and probable consequence. (See *People v. Favor* (2012) 54 Cal.4th 868, 879-880.) Nevertheless, Ramirez's jury was not instructed on the natural and probable consequences doctrine. The trial court found the instruction inapplicable because there was no evidence the charged attempted murders were the natural and probable consequence of a target offense, and neither party argued otherwise. At least arguably, this could end our analysis: "[I]f the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied." (*People v. Offley* (2020) 48 Cal.App.5th 588, 599; accord *People v. Coley* (2022) 77 Cal.App.5th 539, 548.)

In support of a different conclusion, Ramirez argues the "kill zone" instruction given to the jury was ambiguous and could have resulted in the jury adopting a natural

and probable consequences theory of liability. The court instructed the jury using CALJIC No. 8.66.1, as follows: "A person who primarily intends to kill one person may also concurrently intend to kill other persons within a particular zone of risk. This zone of risk is termed the kill zone. The intent is concurrent when the nature and scope of the attack while directed at a primary victim are such that it is reasonable to infer the perpetrators *intended to ensure harm to the primary victim by harming everyone in that victim's vicinity*. Whether a perpetrator actually intended to kill the victim either as a primary target or as someone within a kill zone is an issue to be decided by you." (Italics added.) Ramirez focuses on the italicized portion of the instruction.

Ramirez also emphasizes a portion of the prosecution's closing argument. The prosecutor noted that one of the alleged victims was struck by a bullet, the other was not, and the two victims were not standing next to each other. The prosecutor then said: "Well, I submit to you that every single family member who hit the deck that night would potentially be the victim of attempted murder, [the second victim] included, even though he said he didn't hit the deck. But all those family members were there when the gunfire was being directed towards that group. All of them are victims of attempted murder." The prosecutor then read a portion of the kill zone instruction, including the portion we italicized above, and commented: "So if you think about it logically, when you have a rain of gunfire, eight shots from two different guns, you have a manifested intent to kill. *Maybe they were just trying to kill* [the victim who was shot]*, but you have got all those other people there.* This was a family barbecue. The defendants are clearly shooting

6

within the kill zone of the family where all of them could get killed by this gunfire. Fortunately, nobody did, but just because the defendants missed and didn't hit anybody, that doesn't mean that they are not guilty."  (Italics added.)

Ramirez's view is the kill zone instruction, in conjunction with the prosecutor's argument, could have been understood by the jury to mean "the prosecution did not have to prove the shooters intended to *kill*, as opposed to only *harm*," the victims, and that "anyone in the vicinity of the gunfire, regardless of their actual risk or proximity, could be considered a victim of attempted murder."  This is an "incorrect theory," which Ramirez equates with the natural and probable consequences doctrine.

There are at least two flaws in Ramirez's argument.  First, it is incorrect to equate the natural and probable consequences doctrine with the theory of vicarious liability he proposes his jury could have adopted.  Under the natural and probable consequences doctrine, as normally applied, the murder or attempted murder is the *unintended* consequence of a non-murder "target" offense the defendant intended to aid and abet. (See *Eynon*, *supra*, 68 Cal.App.5th at p. 973; *Smith*, *supra*, 60 Cal.4th at p. 611.)  The scenarios suggested by Ramirez's interpretation of the instructions and the prosecutor's remarks are not that.  One possible scenario is in essence the inverse, where murder of one or more people in the group was the *intended* act by the shooter (and the aider and abettor), and the unintentional consequence of that attempted murder was the lesser offense of exposing others in the group to lethal danger, but without intent to kill. Another possible scenario is that the shooters opened fire with only intent to harm, and no

7

intent to kill anyone in the group, which is not attempted murder at all. (See *People v. Booker* (2020) 58 Cal.App.5th 482, 497 ["'[S]hooting at a person or persons and thereby endangering their lives does not itself establish the requisite intent for the crime of attempted murder'"].) Ramirez has cited no authority treating either scenario as a variant of the natural and probable consequences doctrine, and we are aware of none. And, although section 1172.6, subdivision (a), is broader as to those convicted of *murder*, it encompasses those convicted of *attempted* murder only "under the natural and probable consequences doctrine." Ramirez therefore has not shown he falls into that category of persons eligible for section 1172.6 relief.

Second, by the time of Ramirez's trial, it was settled California law that to convict Ramirez of attempted murder on a kill zone theory, the prosecution had to prove he shared the shooter's specific intent to kill not only the primary target or targets, but also any secondary targets in the kill zone. (See *People v. Bland* (2002) 28 Cal.4th 313, 328, 330-331.) Thus, Ramirez's arguments that his jury instructions and the prosecutor's arguments were open to interpretations that would allow him to be convicted without such intent could have been raised on direct appeal. His failure to do so forfeited that claim. (Cf. *In re Dixon* (1953) 41 Cal.2d 756, 759.) To be eligible for relief under section 1172.6, Ramirez must show he can no longer be convicted of attempted murder "because of changes to Section 188 or 189 made effective [by Senate Bill 1437]." (§ 1172.6, subd. (a)(3).) The section 1172.6 petition process does not resurrect pre-existing arguments that the petitioner had already abandoned. (*People v. Burns* (2023) 95

8

Cal.App.5th 862, 865 ["Section 1172.6 does not create a right to a second appeal, and [the defendant] cannot use it to resurrect a claim that should have been raised in his . . . direct appeal"]; accord *People v. Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 933 [instructional error identified by defendant had "'nothing to do with the legislative changes to California's murder law effected by Senate Bill No. 1437 . . . and Senate Bill [] 775'"]; *People v. Allen* (2023) 97 Cal.App.5th 389, 395 ["A petitioner is ineligible for section 1172.6 relief as a matter of law if, for example, the jury instructions show that jurors were not instructed on any theory of liability affected by Senate Bill 1437's changes to sections 188 and 189"].)

Finally, it is a close question whether the jury's instructions and prosecutor's argument are amenable to the interpretation Ramirez proposes. The jury's instruction on attempted murder lists as one of its elements the specific intent to unlawfully kill a human being. The kill zone instruction repeatedly emphasizes the requirement of intent to kill not just the primary targets, but also any secondary targets in the kill zone, in addition to the language Ramirez emphasizes. (See, e.g., *People v. Brock* (2006) 143 Cal.App.4th 1266, 1277 ["'Jury instructions must be read together and understood in context as presented to the jury. Whether a jury has been correctly instructed depends upon the entire charge of the court.'"]; see also *People v. Covarrubias* (2016) 1 Cal.5th 838, 894 ["'We "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements'"].)

Nevertheless, we need not decide whether Ramirez's jury instructions and the prosecutor's argument in fact could have misled his jury to apply a kill zone theory in an impermissible manner. Because the incorrect theory of liability he discerns from his jury's instructions and the prosecutor's argument is not the natural and probable consequences doctrine, and because any claim of error arising from such ambiguities could have been raised on direct appeal and was unaffected by Senate Bill 1437 and Senate Bill 775's changes to section 188 or 189, his petition was properly denied.

DISPOSITION

The order denying Ramirez's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

10